FLYING SQUADRON FOUNDATION ET AL. *v.* CRIPPEN ET AL.

[No. 25,869. Filed February 4, 1930.]

---

484

*Bingham & Bingham,* for appellants.

*Frederick E. Matson, Solon J. Carter, James A. Ross, Robert D. McCord, Adolph Schreiber, Austin V. Clifford, James W. Fesler, Harvey J. Elam* and *Howard S. Young,* for appellees.

TRAVIS, C. J.—This is a suit in equity by appellee Clarence E. Crippen against appellants and certain of the appellees to decree a trust in certain capital stock of appellee Enquirer Printing and Publishing Company (a corporation), to appoint a trustee for such trust, and now to dissolve the trust upon the trustee's distribution of the corporate capital stock, in question, to the beneficiaries.

The complaint alleges that the defendant Enquirer Printing and Publishing Company (hereinafter designated as "the company") is a corporation; that the plaintiff owns stock in the company of the par value of $5,600; that defendant Duane D. Jacobs is the executor of the last will and testament of J. Frank Hanly, now deceased, that, on or about April 16, 1920, the company was heavily in debt and in need of funds with which to pay its obligations then due; that J. Frank Hanly was a large stockholder in the company, and, on or about the date mentioned, solicited funds from various persons throughout the United States as donations to the company for the sole purpose of paying the debts of the company, for the use and benefit of the company and its stockholders, in proportion to the shares of stock held by each, including plaintiff; that subsequent to the date mentioned, Hanly procured donations as aforesaid for the purpose mentioned and not otherwise, in the amount of $20,000, which money he turned over to the company, and thereupon received from the company, for the use and benefit of himself and all other stockholders of the company, capital stock of the par value of $20,000,

which stock was issued to Hanly in his name as trustee; that Hanly was and continued to be until his death, a trustee, to hold this stock for the use and benefit either of the company as a whole or for each and all stockholders of the company, in the proportion of the stock each held therein at the time $20,000 was turned over to the company for the purpose stated; that Hanly died August 1, 1920, having in his possession as trustee the shares of stock of the company as pleaded; that the defendant Jacobs, as executor aforesaid, is in possession of the certificates of stock issued to Hanly as trustee and claims the same as the property and assets of Hanly, which claim is without right and unfounded, except as to the interest Hanly had therein in proportion to the stock he owned in said company; that defendants Oliver Wayne Stewart, Lewis Hallie McNeil and Jeanette Zweier each claim an interest in the stock held by Hanly as trustee, adverse to the interests of all the stockholders of the company, including plaintiff, and were made parties to answer to their respective interests; that no reason exists for the continuation of the trust in the name of Hanly, and that it ought to be dissolved and the shares of stock in Hanly's name as trustee distributed to the persons entitled to receive them, and for that purpose a trustee should be appointed to succeed Hanly; that the defendant Flying Squadron Foundation (hereinafter designated as "Foundation") claims an interest in the stock of the company held by Hanly as trustee; and that the Foundation should be required to answer as to any interest in the trust property claimed by it.

Defendant Jacobs, executor, answered in general denial, and specially that he admits the obligations of the company pleaded in the complaint and that Hanly as a large stockholder of the company solicited funds from various and divers persons as donations, but alleges that the donations were solicited by Hanly as a personal gift

to him and not otherwise; and also admits that such donations were solicited for the purpose of paying the debts of the company, but alleges that after the donations had been made and received by Hanly, he declined to deliver them to the company except upon the agreement that the company would issue to him, or to such persons as he might name, stock of the par value of the donated sum; that thereupon it was agreed between Hanly and the company that if Hanly would turn over to the company the money which he had collected, the company would issue to Hanly, or to any person designated by him, capital stock of the company of the par value of such donations; that, in pursuance to such agreement, Hanly did turn over to the company $20,550 in cash; that the company, pursuant to the agreement and at the request of Hanly, issued to him as trustee 20,550 shares (of the par value of $1 a share) of the common stock of the company; that, although this stock was issued to Hanly in his name as trustee, he was acting in his own name as trustee only nominally; that, in truth and in fact, if he was such trustee, it was for himself and not otherwise, because the donations were made to Hanly as personal gifts to him, and the stock issued to Hanly as trustee was the sole property of Hanly.

Defendant Jacobs, as executor, also filed his cross-complaint against the plaintiff, the company, Stewart, McNeil and Zweier, and the Foundation; and alleged that Hanly, at the time of the transactions mentioned in the complaint, owned more stock of the company than any other stockholder; that, among the business matters conducted by the company, was the publication of a newspaper known as "the National Enquirer," with which Hanly had been long identified; that, on account of the financial difficulties of the company, it was about to discontinue the publication of the newspaper, and would have been compelled to discontinue the publica-

tion thereof because of the large losses sustained by the company in the publication of the newspaper; that, because of the interest Hanly had in the newspaper, he called upon the various persons with whom he corresponded to donate to him, without expectation of any return, money to enable him to pay its urgent indebtedness; that large sums were received from the persons communicated with by Hanly, aggregating $20,550, for the purpose of enabling Hanly to apply that sum so that the publication of the newspaper would be continued; and alleged also that Hanly, after having collected this sum, delivered it to the company, and in return therefor demanded and received common stock of the company equal to the par value of the amount donated and turned over to the company, to wit, $20,550; and that this capital stock was issued to Hanly as trustee. But cross-complainant avers that he was not acting as trustee for any other person than himself; that the donations were made to him personally and were his personal property; that the capital stock of the company issued to him was his personal property; and that the other cross-defendants named in this cross-complaint were so made cross-defendants to answer to their interests.

The company replied to the special answer of Jacobs, executor, by general denial, and specially that Hanly was the president of the company, and that he had personal charge of the efforts to raise money to take care of the pressing debts of the company; that he, in making his report at directors' meeting May 5, 1920, reported he had on hand certain resources "as a trust fund to be used by him as he shall see fit"; that, on the following day, he stated in directors' meeting "that the trust fund in question was given with the hope that by the use of the fund as indicated through the issuance of stock and the payment of current accounts payable up to April 1, 1920, the National Enquirer would be continued until after

the election in 1920; having received the funds on this condition, he would have no authority to use them except with that understanding unless the consent of those contributing the fund might hereinafter be obtained for the discontinuance of the paper earlier than the date named, and the chair therefore states that the condition named is the only condition upon which said trust fund can be used''; that, at the time the above statement was made, the other members of the board of directors were not informed as to the details of the arrangements made when the donations were paid, the claims of the creditors being so pressing that there was not time to make a detailed investigation of the terms and conditions of the contributions; that the company now believes and alleges that the statement made by Hanly was not an accurate one which gives the terms under which the money was contributed; that the money was, in fact, in the hands of Hanly as trustee to be applied in payment of the debts of the company; that there was nothing in the terms of the donations that made it either necessary or proper to have the capital stock of the company issued in exchange therefor; that at the time of the transaction Hanly was, in fact, a trustee for the company and also its president; that the conditions under which the transactions took place were such that the real rights of the parties were not altered; that Hanly as trustee failed to make a full disclosure of the real situation, on which account the company is in no way bound by the transaction, and the ownership of the stock in controversy should be determined as if no such transaction had taken place; and that such capital stock of the company be ordered delivered to the company and cancelled.

Appellants Stewart, McNeil and Zweier, defendants below, filed answer in general denial to the complaint, counter-claim of the company, and the cross-complaint of the executor, and also filed their cross-complaint where-

in they brought into the action new parties as defendants to their cross-complaint, the names of which parties are Harry Nicoli, Lannes McPhetridge, James A. Parker, Lewis A. Snider, Harry O. Garman, and Farmers and Traders Bank of Lafayette, Indiana, and alleged that none of the persons who contributed the money to the alleged trust fund had any interest in the company, except in so far as it was an instrumentality to print and publish the National Enquirer, and except in so far as it was engaged in executing the original purposes for which it was incorporated. It also alleged the facts concerning the failure of the company to properly finance itself by selling its capital stock. It also alleged, as alleged in the complaint, that the company had become indebted by April 15, 1920, in the sum of $20,000; that all subscriptions for the National Enquirer were paid to the company, but that the subscriptions were not sufficient to pay the cost of publishing the paper; that much business had come to the company as a direct result of its publication of the newspaper, but that the company had not credited the newspaper therefor, and that, if proper credit had been given the newspaper for its publication by the company, the company would not have shown a loss; that the newspaper was published in the interest of temperance and prohibition; that none of the officers and directors of the company, other than Hanly and these cross-complainants, had any interest in this cause of temperance and prohibition, on which account, factions arose concerning the policy of the business of the company, and by April 15, 1920, the company was without funds to meet its current indebtedness and suits were threatened; that, on account of said indebtedness, Hanly and these cross-complainants proposed to the appellees (other than Garman and the bank), that Hanly and the cross-complainants and the other appellees subscribe for 20,000 shares of the unissued capital stock of the com-

pany for the purpose of raising funds for paying the current indebtedness, but appellees refused to subscribe for the stock or to assist in any other manner to save appellees from financial disaster, and Hanly and these cross-complainants were about to be thwarted in their purpose in carrying on the reform of temperance and prohibition because of the failure of the company, which would mean the discontinuance of the publishing of the National Enquirer; and thereupon Hanly and these cross-complainants, in a manner in which they had made former appeals for donations, made a special appeal in the name of the president of the Foundation for the money necessary to pay the indebtedness of the company and to secure the continuation of the publication of the National Enquirer, and the amount of $21,050 was donated in response to their appeal. It is further alleged that this fund was deposited in the name of Hanly as trustee for the purposes of being used to pay the debts of the company, to make secure the continued publication of the National Enquirer, to make secure the control and management of the company in Hanly and these cross-complainants, and also to make secure the original purposes of the incorporation of the company; and to this end Hanly and these cross-complainants agreed to vote and to continue to vote their stock in the company together; and that such fund so received from donors in such amount should be invested in the stock of the company at par, for and on behalf of Hanly and these cross-complainants for such purposes, the division to be that Hanly should own 39 per cent of the stock, Stewart 33 per cent, McNeil 14 per cent, and Zweier 14 per cent, all of which stock was to be issued to Hanly as trustee and held by him for himself and these cross-complainants, and was to be voted with the stock owned by Hanly and these cross-complainants to promote the objects and purposes as alleged. To this end, $20,550 of this trust

fund so contributed by donors was so invested in the common stock of the company under an agreement with the directors thereof that the stock so purchased should be issued to whomsoever Hanly might direct. The stock was accordingly purchased and issued, all of which was done for the purpose of giving Hanly and these cross-complainants a stock control of the company in order to make secure the continued publication of the National Enquirer, and to the end that the company should carry out its corporate obligations and representations made by Hanly and these cross-complainants, upon the faith of which it had been selling its capital stock; that upon the death of Hanly, Harry O. Garman had been elected a director of the company, and he was opposed to the further publication of the National Enquirer or to the execution of such agreement; that, since the beginning of this action, the officers and directors of the company other than these cross-complainants, being the majority of the board of directors, were proposing to immediately discontinue the publication of the National Enquirer. And to prevent such action by such majority of the board, these cross-complainants, through the Foundation, were compelled to and did agree with the company to pay it the sum of $100 a week as a bonus to secure the continued printing and publishing of the newspaper from November 2, 1920 to and including January 13, 1921, and the Foundation was then paying the company $100 a week as such bonus, all of which money to make such payments as bonus was being paid from the funds contributed in the manner and form as made by the contributors to the trust fund here in question, all of which was well known to the officers and directors of the company; the company was still engaged in selling its stock upon the representation that it was proposing to execute its corporate obligations to continue the publication of the National Enquirer; and Hanly, in his life-

time, and cross-complainant Stewart, were the editors of the National Enquirer. After the death of Hanly, Stewart continued as editor, and appellants McNeil and Zweier were contributors to items for publication.. The facts as alleged by these cross-complainants form the foundation for their request that they, with the estate of Hanly, are the owners of the capital stock of the company held by Hanly, trustee, and the unexpended balance of the trust fund remaining on deposit in the bank, in the proportions alleged; that the trust of which Hanly was trustee be continued, and a successor to Hanly be appointed; and that the company, its directors and each of the defendants to this cross-complaint other than the bank, be enjoined and restrained from discontinuing the publication of the National Enquirer, and from disregarding any of its corporate obligations, or its obligations created by the sale of its stock, as alleged.

Defendant Foundation, named in the complaint, answered the complaint and counter-claim separately in general denial, and filed its cross-complaint against all the other parties to the action, and alleged that it was organized under the laws of Indiana July 15, 1915, for philanthropic purposes and not for profit; that, among the objects for which it was incorporated, was the promotion of temperance and prohibition throughout the world, and that it was engaged exclusively in this work; that this cross-complainant was financed by contributors who were interested in the work it was doing, and that the number of such contributors was as many as 75,000, of which more than 15,000 have been and are making annual contributions to finance it and its work, and, in addition to the regular donations made by such contributors, they make additional and further contributions when special appeals are made by the Foundation, its officers and representatives, for special purposes which are incidental to and connected with its work; that

Stewart, McNeil and Zweier were associated with the Foundation in the execution of its work, and they have been officers and directors and members of it and closely associated with its business since the date of its organization, and are still so associated with it and interested in its work; that Hanly was one of the incorporating members of the Foundation, was closely and permanently identified with its work, was its president, and was well known to all of the contributors mentioned; that Hanly, Stewart, McNeil and Zweier, by mutual agreement, consent and cooperation, at the time of the organization of the Foundation, consecrated and dedicated themselves to the cause of temperance, prohibition, etc., and to work together until the full completion and realization of the purposes for which the Foundation was organized. The cross-complaint, in addition to reiterating much that had been pleaded in the complaint and the other cross-complaints, alleged the date of the organization of the company and Foundation, the date upon which the first publication of the National Enquirer was printed, and the approximate number of people that were contributors to other funds of the Foundation which it used to advance the cause of temperance and prohibition, and also set out the number of shares of capital stock of the company purchased by different parties to this suit, and the names of the officers of the company, the history of the company and the Foundation leading up to the incorporation of each one of them, and alleged how the policy of the National Enquirer was controlled, and stated facts concerning the majority and minority holders of the capital stock of the company and the fact of such ownership and of the financial embarrassment of the company, and the amount of its debts, the making of the appeal by Hanly for funds to pay the debts of the company as alleged in the complaint and other cross-complaints; all for the purpose of laying a foundation for the theory

of this cross-complaint, that because Hanly used the stationery upon which was the printed letterhead of the Foundation to write the letters to the many people asking for donations, and because he was president of the Foundation at the time, all the donations belonged to and were the property of the Foundation, and that Hanly held the money and the stock receipt for the same as trustee for the Foundation, and for the further purpose of giving its officers and directors, Hanly and co-appellants Stewart, McNeil and Zweier, the control of the company in aid of the continuation of the publication of the National Enquirer, and that the continuation of the publication of the National Enquirer was essential to the business of the Foundation in executing its work. It also pleaded the ownership of the stock in the company and the voting agreements which were entered into by and between Hanly and Stewart, McNeil and Zweier in order to control the company, and prayed that it, the Foundation, be adjudged and decreed the owner of the capital stock of the company theretofore issued in trust to said Hanly of the par value of $20,550, and also of the trust fund still remaining as a deposit with the Farmers and Traders Bank, and that Stewart be appointed trustee to hold the stock as successor to Hanly, with power to vote the stock at all stockholders' meetings, and also as trustee for the balance of the money left on deposit with the Farmers and Traders Bank, with authority to withdraw the same from the bank, and that the executor, defendant in the main action, be ordered and directed to vote the individual stock of Hanly in accordance with the stock voting agreements, and that the executor retain the stock subject to the further orders of the court, and that defendant bank pay the trust fund now on deposit, in the approximate amount of $500, in the name of Hanly, trustee, to Stewart as trustee, and that the company, its directors, and each of the defen-

dants to the cross-complaint other than the bank, be restrained from discontinuing the publication by the company of the National Enquirer, and further be restrained from disregarding corporate obligations or other obligations of the company which were created by the sale of its stock.

The Farmers and Traders Bank filed its answer, wherein it alleged that it did not carry an account with the Foundation, but that it had an account with "J. F. Hanly, Trustee," wherein there was a balance remaining of $242.36, and that it was ready to deliver the money to whom the court directed.

The company filed answer in denial to each of the cross-complaints, and at this time also filed an amended counter-claim. The amended counter-claim alleged that, under the terms in the letter sent by Hanly to solicit funds, Hanly was obliged to turn over the donated money to the company as a gift, and that no capital stock whatever should have been issued in return therefor; that the capital stock was issued to Hanly as trustee for the company, and that the stock should be returned to its treasury and should not be allowed to remain as outstanding stock; and that Jacobs, the executor, has possession of the certificates which evidenced the ownership of such stock, and that he claims that such capital stock is a part of the assets of decedent Hanly's estate, and that the balance of the sums donated in response to the letter by Hanly to raise funds to pay the debts of the company ($242.36) remaining on deposit with the Farmers and Traders Bank in the name of Hanly, trustee, was donated for the same purpose for which the other funds were donated, was the property of the company, and that the bank should be ordered to deliver it to the company, and that the aggregate amount donated in response to the letters and telegrams was less

than the debts of the company. The prayer to the amended counterclaim of the company is for judgment that the capital stock theretofore issued to Hanly as trustee be returned to its treasury, and that the balance of the fund then on deposit with the Farmers and Traders Bank be paid to the company.

Appellant Foundation made the issue between it and the company on the amended counter-claim by answer of denial. The executor of decedent Hanly answered the cross-complaint of the Foundation by denial, and specially, that the contract alleged in the cross-complaint of the Foundation by which Hanly is alleged to have taken and held the stock in controversy for the benefit of the Foundation was given without consideration. The executor also answered the cross-complaint of Stewart, McNeil and Zweier for the same reasons.

The Foundation filed a second paragraph of special answer to the company's amended counter-claim, which narrated the history of the life of the National Enquirer and the objects of its publication. It also alleged a narrated history of the company and some of the acts of its board of directors concerning the publication of the National Enquirer.

The evidence introduced by the several parties to sustain their affirmative pleadings was both oral and documentary. Some of the oral evidence was for the purpose of identifying many documents and of laying a foundation for their admission in evidence. A brief summary of the evidence necessary to sustain the finding of the trial court, and this court, follows, to wit: In April, 1920, the Enquirer Printing and Publishing Company, which was incorporated under the laws of Indiana and mentioned herein as "company," had been for a long time engaged in editing and publishing the newspaper known as "the National Enquirer," which newspaper was devoted to the cause of the prohibition of the liquor traffic, suppres-

sion of vice and crime, law enforcement, and other reform movements. The National Enquirer in its masthead published that the company was the owner and publisher of the National Enquirer. J. Frank Hanly in his lifetime was the editor of this newspaper until his death, which occurred August 1, 1920. In order to further Hanly's work through the newspaper for the causes for which the newspaper was published, and for the purpose of assisting him financially and otherwise, Hanly, with Stewart, McNeil and Zweier, organized and incorporated the Flying Squadron Foundation, herein named as "Foundation." The objects of the Foundation were to hold money, solicit donations of money, and expend such money in promoting the cause for which it was organized. In 1920, the company was in financial difficulties. It owed in excess of $20,000 on past-due obligations. The company had made money by its job-printing business, but lost heavily in its business of publishing the National Enquirer. Hanly was president of the company and of the Foundation. His closely allied associates, Stewart, McNeil and Zweier, were directors of both the company and the Foundation. These four constituted the minority faction of the company. The majority faction consisted of Crippen, Nicoli and others named in the pleadings. The board of directors of the company met and discussed ways and means to raise funds by the sale of its capital stock that had not yet been sold, but did not agree upon any way to raise the necessary money. It was suggested by some of the directors that the publication of the National Enquirer be discontinued, because such continuation would cause further losses. The minority faction wanted the paper continued to be published by the company. Hanly and Stewart, before the incorporation of the Foundation, had been lecturing throughout the United States in the interest of the prohibition of intoxicating liquor, and in

such work appealed for money with which to carry on the work. In obtaining such donations, the names of the donors and their addresses were taken and made into a list. This list was used many times before and after the incorporation of the Foundation to solicit further funds. After the incorporation of the Foundation, the list was lodged with, continued, enlarged and operated by the Foundation. Hanly conceived the idea of raising money with which to pay off the indebtedness of the company by special appeal to the persons whose names constituted the list mentioned. This conception he immediately put into execution. The first step was the sending of 90 odd telegrams to 90 members of the list. All but one of the telegrams were of the following tenor, to wit:

"Indianapolis, Ind. Apr. 15, 1920. Louis Waldron, 27 Radford St., Yonkers, N. Y. Enquirer company in financial trouble doing utmost to save it must have twenty thousand dollars at once if National Enquirer is to live. It is a time for giving not loaning we must not be disarmed at such an hour am asking friends to help am depending on you make it hundreds if possible though every dollar will count failure will break my heart I have fought too long and given too much of myself for you to let that happen now compelled to go to Washington Saturday to argue Ohio liquor cases in the United States Supreme Court involving validity of prohibition national amendment must know before leaving wire answer naming amount put a liberty bond on the altar. J. Frank Hanly 755A."

The one telegram excepted called for a donation of a specific amount, to wit: $5,000.

In reply to the telegrams $6,592 was donated. These telegrams were followed by more than 18,000 letters addressed to as many different persons, whose names were upon the list mentioned, which letters were posted on the 15th, 16th and 23d days of April, 1920. All were of the same wording, except about 4,000 to which was added

a postscript. The one which was introduced in evidence with the postscript is here quoted, to wit.

"April 23, 1920. Dear Friend: I am fighting with my back to the wall. The Enquirer Printing and Publishing Company is in financial difficulty, due to heavy purchases of paper and equipment—the equipment, of course, was necessary, and the purchase of paper wise, since it is advancing in price every day and the stock we have on hand is worth substantially more than we paid for it—and to a rapidly expanding and growing business—a business we have lifted in a year and eight months from nothing to a gross annual output of more than $200,000.00.

"I must have $20,000.00, and have it quickly, if the National Enquirer is to live. Our current accounts payable equal that sum. We have a like amount in accounts receivable, but they cannot be gotten in in time to meet the emergency.

"The loss of the paper would disarm me and leave me impotent at an hour when I ought be to most effective. Failure of the company would ruin me financially—I have personally endorsed heavily for it. It would take the house I live in; all this in addition to the fifteen years—the heart and prime of my life—which I have given to a cause now all but victorious, and what is more, it would literally break my heart; I could not stand up under the humiliation of it. Therefore, I put the question to you: Have I not fought too long and faithfully, and given myself too utterly, for you to permit this to come to me now.

"The sum of $20,000.00 is a large sum in the aggregate, large for one—too large for me under the present circumstances—but for each of the many who have shared my vision and made my life work possible *it is but a little thing, a few hundreds at most.*

"I called the owners of the principal current accounts together and told them the situation frankly. They were fine, splendid, and promised to give me a few days in which to raise the $20,000.00; I came from them to my office and wired a friend, telling

him that it was a time to give and not to loan, that I could not hope to repay. In the evening he called me by long-distance telephone and said he would give $5,000.00—one-fourth of the needed sum of $20,000.00—and mail check at once, on the sole condition that it should not be used until I had raised the $20,000.00. I then telegraphed a few other friends. Answers by wire have come tendering as gifts an aggregate of $1,765.00. Mr. Stewart and I, with others in this office, will be able to raise some $1,700.00 more. This leaves a balance of $11,535.00. I have only a few days. Whatever is done must be done the hour you receive this.

"I am compelled to be in Washington to make the oral argument in the Supreme Court of the United States in the two Ohio Referendum cases, which involve the validity of the prohibition amendment to the Federal Constitution. I go under the circumstances with a heavy heart, and at a time when I need every ounce of my strength physically and mentally, for I will be pitted there against great legal minds. I would be utterly unequal for the task but for the cheer the responses already made have brought me and the faith I have that my friends —the best a man or a cause ever had—scattered across the continent, will not fail me. I am depending upon you to do what you can. It is an hour for giving and not loaning. Therefore, I am asking you to make your contribution a gift and make it hundreds if you can, though every dollar will count. What you give will be held until I have raised the $20,000.00. Then I will use it to discharge the current debts of the company. If I do not raise the $20,000.00 in the few days given, I will return your money to you. Make your gift a personal one to me, not to the company, so that if I fail to raise the amount, it can be returned to you.

"I hope some friend who receives a copy of this letter will be able to give $1,000.00—maybe you can—some others $500.00; many $100.00. Some who receive the letter will, of course, do less, necessarily so, but their gifts and loyalty will be none-

the-less valued. I leave it to your own conscience, wisdom and judgment. If you cannot give cash, put a liberty bond upon the altar.

"But remember this, that my future usefulness to a great cause depends upon what you do. I will return from Washington to face either success or failure. Which it shall be is in the hands of the friends to whom this letter goes.

"Sincerely and fraternally yours,
"J. Frank Hanly.

"P. S. Please to note that any response you may send to this letter is to me to be used as indicated, and would not be a payment on any unpaid pledge which you have to the Flying Squadron Foundation, which, of course, you would expect to pay at your later convenience.

_____1920.

"J. Frank Hanley, 204 Rauh Bldg. Indianapolis, Ind. Dear Friend: I enclose herewith $————— This is not a payment on my unpaid pledge to the Flying Squadron Foundation, but in response to your special appeal.

"Name_____
"St. & No._____
"City_____ State _____"

The letters were printed upon the letterheads of the Foundation. The telegrams had no such designation. The donations of money, bonds, etc., were sent to and received by Hanly. All such funds were placed on deposit by Hanly with the Farmers and Traders Bank of Lafayette, Indiana, to the credit of J. Frank Hanly, trustee. All banking business of the Foundation for the deposit of its funds was with the City Trust Company, Indianapolis, Indiana. After the fund was fully subscribed and deposited by Hanly, as trustee, in the Farmers and Traders Bank of Lafayette, Indiana, he paid debts of the company out of such fund. Hanly then had common capital stock of the company issued in the name

of J. Frank Hanly, trustee, in an amount equal to the sum of money paid in discharging the debts of the company. Hanly had not advised all directors of the company that he was raising a fund by donation to pay the obligations of the company. After the fund had been fully subscribed, Hanly, at a meeting of the directors of the company, informed them that he had raised a fund of $20,000 with which to discharge the debts of the company, and that he held such fund in trust. But, before paying the indebtedness or delivering the money to the company, he informed the directors that it would be necessary for the company to execute two conditions: (1) that it should issue from its unissued capital stock the amount of capital stock equal in par value to the sum of money paid in discharge of the debts of the company; and (2) that the National Enquirer must be published by the company until after the general election November, 1920. This meeting of the directors was held May 5, 1920. The majority of the directors not being willing to incur further losses by the publication of the National Enquirer, refused to concur in the conditions named for the gift of the money in the discharge of its debts until it had considered the matter, and it was thereupon decided to adjourn until May 6. At the meeting of directors held May 6, it was decided to issue the stock and to continue the publication of the National Enquirer until after the election. The capital stock of the company was issued to J. Frank Hanly, trustee, in the par value of $20,550, which was the same amount of money paid by Hanly as trustee from the funds solicited, donated and thereafter deposited in the Farmers and Traders Bank, in discharge of the debts of the company. The amount withdrawn from the deposit in the Farmers and Traders Bank in payment of the debts of the company did not exhaust the deposit. Hanly withdrew, by check, from the fund which stood in his name as trustee, $267.67 for his

own personal use and benefit. There yet remained in the bank a balance of $242.36, which stood so at the time of Hanly's death, and is now held by the executor in the same deposit.

Oral evidence was introduced to show that Hanly, Stewart, McNeil and Zweier had a mutual understanding that the capital stock of the company so issued to Hanly as trustee was to be divided among themselves in percentages, shown by the evidence, which it is not necessary to narrate. Hanly had written letters after he had obtained this stock in his name as trustee, saying that he obtained it for the purpose of gaining control of the company and thereby gaining control of the board of directors, and through that, the policy and operation of the company in the conduct of its business. Stewart testified that Hanly, in a conversation with him and his associates McNeil and Zweier, said that the capital stock of the company when apportioned among them was to be held by them for the beneficial interest of the Foundation. This evidence was offered for the purpose of showing the intention of Hanly in holding this trustee capital stock, and for what purpose it was so to be held. The evidence was limited for consideration upon the issue between the Foundation and Stewart and McNeil and Zweier, for the reason that it was not held in the presence of the other parties to this action.

The court's finding was for the Enquirer Printing and Publishing Company upon its cross-complaint with reference to its capital stock issued to Hanly as trustee; that decedent Hanly held such capital stock as trustee for the benefit of all the stockholders of Enquirer Printing and Publishing Company; that a trust be declared in their favor; that such trust is now ordered dissolved and the executor of the last will and testament of decedent Hanly is ordered to deliver the stock to the proper officers of the Enquirer Printing and Publishing Com-

pany for cancellation. There was a further finding for defendant and cross-complainant Duane D. Jacobs, executor of the last will and testament of J. Frank Hanly, deceased, with reference to the balance of $242.36 in the trust account in the Farmers and Traders Bank of Lafayette, Indiana; that said balance belongs to the estate of said decedent, and the Farmers and Traders Bank of Lafayette is ordered to pay same to the executor for the use and benefit of the estate of the decedent. There was a finding against plaintiff Clarence E. Crippen and for the defendants on his complaint; also a finding against the Flying Squadron Foundation and for the defendants on its cross-complaint; also a finding against Oliver Wayne Stewart, Lewis Hallie McNeil and Jeanette Zweier, and for the defendants on their cross-complaint.

Thereupon, the court made its decree upon the findings that Enquirer Printing and Publishing Company have and recover from its codefendants and plaintiff possession of the certificates of the common capital stock of the Enquirer Printing and Publishing Company, which certificates were numbered 152 to 167 both inclusive, and 172 to 176 both inclusive, and for the aggregate par value of $20,550, and that the defendants and counter-claimant Enquirer Printing and Publishing Company is the owner thereof, that the trust heretofore existing by virtue of which J. Frank Hanly held same for the benefit of said Enquirer Printing and Publishing Company be, and the same is, dissolved. The defendant Jacobs, executor, is ordered to deliver such certificates to the proper officers of the Enquirer Printing and Publishing Company, and said officers are ordered to cancel same; and it is further ordered that Jacobs, as such executor, have and recover from its codefendants and the plaintiff the sum of $242.36 on deposit with the Farmers and Traders Bank, Lafayette, Indiana, in the name of J. Frank Hanly, trustee; and the Farmers and

Traders Bank is ordered to pay such amount to Jacobs, executor, as an asset of the estate of decedent J. Frank Hanly. It is further decreed that plaintiff take nothing by his complaint except what inured to him as a stockholder in the Enquirer Printing and Publishing Company; that the Flying Squadron Foundation take nothing by its cross-complaint; that Oliver Wayne Stewart, Lewis Hallie McNeil, and Jeanette Zweier take nothing by their cross-complaint; and that Enquirer Printing and Publishing Company and Jacobs as executor recover from the defendants and cross-complainants, the Foundation, Stewart, McNeil and Zweier, the costs of this suit.

The Foundation filed its separate motion for a new trial; and Stewart, McNeil and Zweier filed their separate motion for a new trial, which several motions for a new trial were overruled. The Foundation then filed its motion to modify the judgment, asking in the motion that the judgment be modified "to comply with the undisputed and uncontroverted evidence whereby there will be judgment in favor of the said cross-complainant Flying Squadron Foundation for the amount of stock in question represented by the amount of each of the several remittances and contributions in question as follows" (setting out in numbered paragraphs 15 different amounts which were subscribed by many people as shown by exhibits in evidence). The motion to modify the judgment was overruled. An appeal was taken by Flying Squadron Foundation and by Oliver Wayne Stewart, Lewis Hallie McNeil, and Jeanette Zweier from the judgment.

The errors relied upon by the appellants are the rulings of the court overruling the separate and several motion for a new trial by appellants Oliver Wayne Stewart, Lewis Hallie McNeil and Jeanette Zweier, and in overruling the separate motion for a new trial of appellant Flying Squadron Foundation, and for overruling the

separate motion of appellant Flying Squadron Foundation to modify the judgment. The point is made under the propositions that overruling the motions for a new trial was error, that this case being one of purely equity jurisdiction, it belongs to that class of cases in which, on appeal, this court is required to consider and weigh the evidence, and, if in the performance of such judicial duties, the judgment is not fairly supported by the evidence, or is clearly against the weight of the evidence, it is the duty of this court to award judgment according to the clear weight of the evidence, and makes the point that there is no conflict of evidence in this case, even though some of the evidence was given *viva voce*.

Even though appellant be right in this contention that this court upon appeal should weigh the evidence, it will not do so if it is apparent from the briefs that it is not necessary to weigh the evidence where there is no conflict in it, as stated by appellants, to sustain the finding of the court. Where there is no evidence to sustain the finding of the court, on appeal, the judgment will be reversed, or if the evidence is clear and not conflicting, this court will enter such other judgment or decree as may seem right and proper upon the whole case. *Atkinson, Admr.*, v. *Indiana, etc., Ins. Co.* (1924), 194 Ind. 563, 143 N. E. 629.

Appellant Flying Squadron Foundation, as one of its propositions leading to reversal of the judgment, asserts that this court on appeal is required to consider and weigh the evidence because this case is one of purely equitable jurisdiction, not triable by a jury, and bases such proposition upon the legislative mandate given by §8, ch. 193, Acts 1903 p. 338, §723 Burns 1926. Without giving heed to objections to this proposition by other parties, the court will consider the case, in so far as it relates to the appellants Flying Squadron Foundation and Stewart, McNeil and Zweier,

upon the propositions that this court consider and weigh the evidence upon appeal, if the judicial finding is not fairly supported by the evidence, or is clearly against the weight of the evidence, and the claim of appellant is not partially based upon substantive oral evidence. Before entering upon the consideration of the case as it affects this appellant, in a consideration of the evidence as proposed, it were well first to dispose of this appellant's answer in general denial to the amended counter-claim of appellee Enquirer Printing and Publishing Company. In this amended counter-claim, appellant Flying Squadron Foundation, with other defendants named in the amended counter-claim, was made a defendant, for the reason that it, the Foundation, claimed some interest in the capital stock, which theretofore, as alleged, had been issued to J. Frank Hanly, trustee, and the balance of the subscription fund upon deposit in bank, and that it was made a party to set up its interest. It is not alleged in the amended counter-claim that this appellant had any interest in the action, or that it had any interest in the capital stock and deposit in the bank in question, or that it held personally or constructively in its possession, or had control of either the capital stock or the balance of the fund on deposit in bank. Allegations of the character in this amended counter-claim concerning this appellant are not sufficient, when met by a general denial, to form any issue of law or of fact. The allegation of the amended counter-claim is a statement of a claim of the defendant, and the denial of that statement amounts to nothing more or less than a disclaimer that it has any interest in the controversy. *VanGorder* v. *Smith* (1885), 99 Ind. 404, 406, 407.

Appellant Flying Squadron Foundation also filed a special answer to the amended counter-claim of Enquirer Printing and Publishing Company. The special answer seeks to meet and destroy the effect

of the amended counter-claim, by the allegations of fact to the effect that appellee Enquirer Printing and Publishing Company never had any right, title or interest to the property in controversy. This pleading, as a special answer, fails to meet the allegations of the amended counter-claim to form a triable issue, for the reason that a special defense to an action, if not expressly, then by implication, admits the allegations of the complaint as well pleaded and sufficient to sustain a judgment, were it not for the facts specially pleaded in answer to defeat the claim by the plaintiff. *Stephens* v. *Conley* (1914), 48 Mont. 352, 138 Pac. 189, Ann. Cas. 1915D 958; *Piercy* v. *Sabin* (1858), 10 Cal. 22, 70 Am. Dec. 692. The office of a special answer to an affirmative pleading is to avoid plaintiff's right as set up in his cause of action. The allegations of appellant's special answer seek to destroy the cause of action to which it is addressed, not to avoid it. Under such a condition of the pleadings, all evidence competent under such special answer is competent under the issue formed by the answer of general denial. *Cheney* v. *Unroe* (1906), 166 Ind. 550, 77 N. E. 1041, 117 Am. St. 391. The special answer, being not to avoid but to destroy the cause of action which it challenges, is neither more nor less, in legal effect, than an argumentative general denial. Appellant Flying Squadron Foundation, having met the allegations of ownership of the things in suit by a general denial, which, in effect, is a disclaimer, there is no issue for trial presented by this appellant against the claims of appellee Enquirer Printing and Publishing Company by its amended counter-claim. But appellant Flying Squadron Foundation, by its cross-complaint, affirmatively pleads ownership of the property in controversy. Appellee Enquirer Printing and Publishing Company and the other defendants to the cross-complaint denied the allegation of such cross-complaint generally, and, upon the issue thus made,

Flying Squadron Foundation introduced evidence to sustain its allegations. It introduced, to sustain its cross-complaint under the issue, both documentary and oral evidence, and, to come under the statute last hereinbefore cited in argument, says there is no conflict between the evidence in its behalf and the evidence in behalf of the defendants to the cross-complaint, which is denied by appellee Enquirer Printing and Publishing Company. If, in deciding the issue upon appellant Flying Squadron Foundation's cross-complaint and the denial thereof, only such evidence is considered which is given by the cross-complainant and such evidence given by the defendants to the cross-complaint which it does not deny, it can have no cause to complain upon the consideration of such evidence to ascertain whether the finding against it is fairly supported by the evidence and whether the claim of appellants is not partially based upon substantive oral evidence.

Appellant Flying Squadron Foundation, to sustain its cross-complaint, introduced evidence to the effect that the Enquirer Printing and Publishing Company was in financial distress and that it owed $20,000; that J. Frank Hanly was its president and also president of Enquirer Printing and Publishing Company; that Hanly, with the other directors of the Flying Squadron Foundation, met in conference to consider the debt of the Enquirer Printing and Publishing Company, where such directors had under consideration the damaging result which must follow if such $20,000 of indebtedness was not paid, and further the manner of raising the money for the Enquirer Printing and Publishing Company necessary to pay its debt. The plan was conceived that Hanly immediately send telegrams to solicit funds, which telegrams were all of the same tenor and were sent to nearly 100 persons. The telegram was put in evidence. Hanly conceived following the tele-

gram with letters soliciting funds, which letters were sent to about 18,000 persons. Copies of the letters were put in evidence. The sum of money deposited in the Farmers and Traders Bank in the name of J. Frank Hanly, trustee, was the money received as a gift by donations in response to the telegrams and letters. To some of the letters was appended a blank form to be filled in by the recipient as and for the donor's gift. The letters which were sent out the first and second days did not have attached thereto the blank form here mentioned. Appellant Flying Squadron Foundation claims that the gift made in response to the letter belongs to it, and bases its claim upon the evidence to sustain its cross-complaint in proof of the alleged fact that Hanly and the other directors of this cross-complainant made the special appeal through the letters and telegrams to persons who theretofore had made gifts to it for other causes; that this appeal was for the purpose of gaining the money in its own right; that, upon gaining the fully subscribed amount of $20,000 or more, the fund should be invested in the common stock of Enquirer Printing and Publishing Company, the stock to be in the name of Hanly as trustee; and that the money so used to purchase said stock should be by the Enquirer Printing and Publishing Company applied in payment of the indebtedness of the Enquirer Printing and Publishing Company. It will be noted that this claim, which is based upon the alleged agreement between the Flying Squadron Foundation of the first part and its codefendants, who were its officers and directors of the second part, as delineated by the evidence, was privy to themselves only, and does not include in the arrangement the assent of any of the other parties to this action, and did not include either the assent or knowledge of any of the donors to the fund. This arrangement in behalf of the Flying Squadron Foundation, made by it and its officers and directors, as

pleaded and as sustained by proof, must be considered with the telegrams and the letters to ascertain the legal effect of the pleading of the ultimate fact that the whole sum of the donations belongs to it, the Flying Squadron Foundation, for the purpose of paying for the purchase of capital stock of the Enquirer Printing and Publishing Company; and that the money used in the purchase, which was the money donated, should be limited in its use by the Enquirer Printing and Publishing Company to the payment of its debts in question. The construction of the letters, together with the evidence in proof of the arrangement between the Flying Squadron Foundation and its officers and directors to obtain the donations, as to the ultimate legal effect is a matter of law. The gist of the letter is as follows: The Enquirer Printing Company is in financial difficulty; I must have $20,000 and have it quickly if the National Enquirer is to live; our current accounts-payable equal that sum; I am depending upon you to do what you can; it is an hour for giving and not loaning; therefore, I am asking you to make your contribution a gift; what you give will be held until I have raised the $20,000; then I will use it to discharge the current debts of the company. Cross-complainant, in support of its claim, depends also upon another sentence in the letter, which is, "Make your gift a personal one to me, not to the company, so that if I fail to raise the amount, it can be returned to you." The gist of the telegram is of like tenor. The following is an excerpt from it: "Enquirer Company in financial trouble. Must have twenty thousand dollars at once if National Enquirer is to live. It is a time for giving, not loaning." The basis for and the limitations of the gifts made must be found in the expression of the donors based upon the knowledge they had of the necessity for the gifts and the use to which the gifts were to be put.

Inasmuch as the evidence of the arrangement by the Flying Squadron Foundation with its officers and directors to solicit the money, and to purchase such stock with it, was not charged to the knowledge of the donors, such evidence does not support the theory that the donations were made for that purpose, and may not be considered to limit the plain intent of the donors, who acted solely upon the letters and telegrams. After the receipt of the telegrams or letters, the donors, in making their gifts, were prompted solely by the letter or the telegram. It follows that the letter and telegram then became the utterance of the several donors and formed the basis and limitation of the several gifts, as much as to say: "To aid the financial difficulty in which the Enquirer Printing and Publishing Company finds itself, I send the amount enclosed to aid in the raising of $20,000. I am sending you the amount enclosed as a gift and not as a loan. You are not to use the money I enclose unless the full amount of the $20,000 is raised. In the event the $20,000 is raised, I instruct you to use it to discharge the current debts of the Enquirer Printing and Publishing Company. However, I am making this gift to yourself in name instead of to the company so that if the full amount of $20,000 is not raised, the amount I send to you can be more easily returned to me than if I sent it in the name of the company." The telegram may in like manner be composed into the language of the donor, with a limitation to use the gift only to pay the obligations of the Enquirer Printing and Publishing Company. Inasmuch as the donor knew nothing of any secret arrangement by the Flying Squadron Foundation with its officers and agents, such arrangements could not emanate from the mouths of the donors either as a basis or a limitation of the gift, from which it further follows that the letter alone is to be construed to ascer-

tain the basis and the limitations of the gift and for what purpose the gift was to be used.

The Enquirer Printing and Publishing Company, in the presentation of its evidence to sustain its counterclaim, introduced in evidence, over the objection of the Flying Squadron Foundation, copies of the letters and of the telegrams sent to the donors. In the consideration now of the Flying Squadron Foundation's affirmative claim to the capital stock of the Enquirer Printing and Publishing Company given in return for the $20,000 and more which was made up of accumulated gifts, we use the letter and the telegram, though not as introduced by the Enquirer Printing and Publishing Company, but as introduced in evidence by the Flying Squadron Foundation. In its introduction of the letters, it introduced specific letters which had been addressed to specific persons, but qualified the introduction of the letters as being of like tenor with the one introduced by Enquirer Printing and Publishing Company. The conclusion must follow that the several donors made their gifts solely upon the representations made by them in echoing as an original the letter and telegram. That part of the letter which referred to the return of the gift in the event the whole $20,000 was not raised need not be considered because the full amount was raised. The whole amount of these donations was deposited by Hanly in bank in his own name as trustee and by him paid over to the Enquirer Printing and Publishing Company, except the amount remaining in bank at the time of Hanly's death, and the amount that Hanly obtained from the fund by check for his own personal use. The evidence is insufficient to establish the fact that the Enquirer Printing and Publishing Company knew the purport of the telegram or letter, or the arrangement made by the Flying Squadron Foundation and its officers and directors before the fund was donated,

to the effect that the money should be used to purchase stock of the Enquirer Printing and Publishing Company. It is plainly apparent from the evidence in behalf of Flying Squadron Foundation that the finding against it is fairly supported, which is sufficient foundation for this court to deny appellants' request to weigh the evidence. The finding against this appellant is supported by sufficient evidence, and it is not contrary to law.

Appellants Oliver Wayne Stewart, Lewis Hallie McNeil and Jeanette Zweier, by their separate cross-complaint against all the other parties allege ownership of the property, and issue was formed on the cross-complaint by the general denial of Enquirer Printing and Publishing Company and other parties prior to this cross-complaint. These appellants, parties plaintiff in this cross-complaint, join with appellant Flying Squadron Foundation in a presentation of the errors relied upon for reversal, and say in the brief that the interests of all the appellants are identical, and their objects and purposes in this case in both the court below and in the Supreme Court upon appeal are parallel. The theory of this cross-complaint appears to be that these cross-complainants and Hanly, by the manner in which they accepted the donations, unknown to the donors, decided the *status* of the ownership of the fund, and that such *status* of ownership, by their acts as pleaded, was established in themselves as the equity owners, and that the legal ownership of the donated fund, and, therefore, of the capital stock of the Enquirer Printing and Publishing Company, was in Hanly as their trustee, and that they and Hanly were the *cestuis que trust* of not only the donated fund, but the capital stock of the Enquirer Printing and Publishing Company alleged to have been purchased by them with the donated fund, and the balance of the donated fund remaining deposited in bank. It is not pleaded in the cross-complaint

that these schemes and acts of raising the fund and acquiring ownership of it, and the use of it to purchase stock, were made known to the donors. Neither is there evidence to establish the fact that the donors had any knowledge of any scheme of action to be carried out in the future except what was contained in the telegrams and the letters which were sent to such donors, and upon which, and only which, the donors acted. The same reasoning in the construction of the telegrams and letters used in application for decision upon the Flying Squadron Foundation's cross-complaint applies here. The basis, the qualifications, the limitations, and the extent of the use of the donated fund are expressed by the donors through the telegrams and letters in evidence which asked for the donations. When the donations were made, the telegrams and letters became the expression of the donors to govern and control their several and respective gifts. Any agreement or scheme by Hanly and these cross-complainants, either previous to the sending of the telegrams and letters, or after such telegrams and letters had been dispatched and received, can have no effect to form, modify, or change the intended use to which the gifts were to be put. According to the letters and telegrams, the company was the one which was in distress and is plainly the one intended to be the donee. These appellants joined in the request that the evidence be weighed on appeal. The request is refused. The evidence in its behalf is of the same purport as that to support Flying Squadron Foundation, and supports the finding against these appellants, and the finding is not contrary to law.

Appellee Duane D. Jacobs, executor of the last will and testament of Hanly, by his cross-complaint against appellees Crippen, Enquirer Printing and Publishing Company, and appellants Stewart, McNeil and Zweier, and Flying Squadron Foundation, pleads

ownership of the property, upon which cross-complaint issue was formed by the general denial and special answer of Enquirer Printing and Publishing Company, and by the special answer of Flying Squadron Foundation.

This cross-complaint does not ask the court on appeal to weigh the evidence as did appellants. The proposition of appellee Jacobs is that, as a result of the appeal letter by Hanly for donations and the responses thereto, Hanly became the absolute donee for the fund solicited by way of an absolute and personal gift to Hanly; and depending thereon, the further proposition that Hanly was the vendee of the Enquirer Printing and Publishing Company, vendor of its common capital stock here in question, which relation is incompatible with that of trustee and *cestui que trust*, under which proposition the points are made that Hanly designed and controlled every step taken in raising the donated fund, and this proposition is supported by construction of parts of sentences carved out of the appeal letter which was sent by Hanly to the donors and to many others. This cross-complaint bases its reasoning and argument to sustain its proposition upon the following taken from the appeal letter: "I must have $20,000 and have it quickly . . . I could not hope to repay . . . it is an hour for giving not loaning. Therefore, I am asking you to make your contribution a gift . . . make your gift a personal one to me, not to the company . . . "; and follows in the brief with argumentative reasoning with this question, "Is not the appeal letter consistent with the idea that Governor Hanly solicited a personal gift basing his request upon the reasons set forth therein?" The answer to the question is that it is unfair to so strip the appeal letter of what this cross-complaint says is "reasoning, argument and description." The whole letter must be considered. This cross-complainant bases his ownership upon the appeal letter, but in his own behalf seeks to pre-

sent his question upon the parts of the letter above quoted. Hanly did not make this appeal because he was in distress. He put the matter plainly that it was the Enquirer Printing and Publishing Company that was in financial difficulty, and in stating in the letter that "I must have $20,000 and have it quickly," followed with the statement "our current accounts-payable equal that sum." Hanly was closely identified not only with the Enquirer Printing and Publishing Company as its president and largest stockholder, but also with the Flying Squadron Foundation as its president. It appears plainly by the use of the pronoun "our" in relation to the accounts-payable, that it was to be understood that the accounts-payable were those of the Enquirer Printing and Publishing Company. The part quoted from the letter "I could not hope to repay," appears in the part of the sentence in the letter where he tells the donors that he has wired a friend telling him that it is time to give and not to loan, that he cannot hope to repay. Even taking the words as construed by this cross-complainant, it could but mean that Hanly could not hope to repay to the donor any sum of money that he might contribute in response to the telegram. Concerning the excerpt of the letter made by this cross-complainant in his brief that "It is an hour for giving and not for loaning," it is plainly to the intent that whatever was sent by the recipient of the letter was to be a gift absolute, to be used for the purpose designated in the letter, which was that it should be used to aid in paying the accounts of the Enquirer Printing and Publishing Company. That part of the sentence exerpted from the letter by this cross-complainant, to wit, "Therefore, I am asking you to make your contribution a gift," does not appear in the same sentence with the remainder of the letter quoted in cross-complainant's brief, and is not to be construed therewith, as contended by cross-

complainant. The remainder of the quoted part, after the ellipsis, begins with a new sentence, to wit, "Make your gift a personal one to me, not to the company," and then in the remainder of the sentence is stated the reason why, to wit, "so that if I fail to raise the amount it can be returned to you." That part of the letter exerpted in this cross-complaint will not bear the construction given it by appellee executor, when considered with other parts, or the whole of the appeal letter.

The proposition of appellee executor upon his assignment of cross errors is based upon his motion for a new trial for the reason that the decision of the court is not sustained by sufficient evidence and is contrary to law, and also upon his motion to modify the finding and judgment of the court. The finding of the trial court against this cross-complainant upon the issue made by the answers to his cross-complaint is sustained by sufficient evidence and is not contrary to law.

To support its counter-claim, Enquirer Printing and Publishing Company introduced in evidence, over the objection of Flying Squadron Foundation, the ▮▮▮ record of the minutes of a meeting of its board of directors, which concerned the manner of the issue of its capital stock in the sum of $20,550 to Hanly as trustee in return for the money delivered to it by Hanly from the donated fund. The question of its incompetency raised by the objection of Flying Squadron Foundation must depend upon the issue made by the answer of general denial and the special answer by Flying Squadron Foundation. As hereinbefore determined, these answers amounted to a disclaimer, and the objection of Flying Squadron Foundation to the admission of this evidence for the reason that it was self-serving, is without foundation. The other parties did not object to the introduction of this evidence. This

counter-claimant, to support its counter-claim, also introduced in evidence copies of the letters and telegrams sent out in the name of Hanly soliciting gifts of funds. The Flying Squadron Foundation objected to their introduction for the reason that such letters and telegrams did not show to whom they were sent. It is admitted by the contention of all the parties that all of the letters were of a like tenor in so far as the limitations of the gift were concerned. So also were the telegrams. The letters, the persons to whom they were sent, and the amounts contributed by each donor were put in evidence by Flying Squadron Foundation in its behalf, and are before the court for consideration. The purpose of having the letters and telegrams for consideration was to show the terms and limitations of the gifts made in response thereto; the question was not objectionable. Flying Squadron Foundation also claims harmful error was made by the trial court in admitting and considering the evidence given by counter-claimant in connection with the publication of the National Enquirer for the year 1920. There is evidence in the record to the effect that the loss was occasioned by the printing of the National Enquirer and that nearly the whole of the loss thus occasioned accrued in such publication for the year 1920. Appellant Flying Squadron Foundation bases its objection upon its statement that no issue was involved to which such evidence was applicable. There was an issue as to whether or not the donated fund was given expressly for the payment of the debts of this counter-claimant. The company's allegation is to the effect that the whole sum of gifts was not equal to its debts which the sum was raised to pay. It is competent to sustain the counter-claim, not only in the allegation that Hanly paid to the counter-claimant that part of the gift equal to $20,550, but further, that its indebtedness,

which the donations were given to pay, was sufficient to cover the balance of the fund deposited in bank.

Flying Squadron Foundation also complains that the court erred in refusing to admit in evidence the deposition of Edward Haynes concerning his intent in making his contribution of $5,000. Haynes, in making his contribution acted upon the telegram sent to him, which became his expression as to the uses and limitations of his gift. After the money had been given, received and spent, he could not be heard to contradict his stated purpose for which the fund was to be used, as expressed in the telegram.

In support of the counter-claim of appellee Enquirer Printing and Publishing Company, and, in answer to the claims of all the other cross-complainants, the record shows that there is no dispute of the following facts: Hanly sent a circular letter and a circular telegram, each of which was introduced in evidence, to more than 18,000 persons. Responses were made by some of those who received the letters and telegrams which amounted to nearly $21,000. Hanly placed all of the fund so received on deposit in his own name as trustee in the Farmers and Traders Bank. He delivered out of such money to the Enquirer Printing and Publishing Company $20,550. The money so received by Enquirer Printing and Publishing Company was used by it to pay its debts. There remains on deposit as a balance of the fund $242.36. Hanly demanded and received from Enquirer Printing and Publishing Company its common capital stock in the amount of $20,550 in return for a like sum of money paid to the Enquirer Printing and Publishing Company by Hanly from the fund received in response to the letters and telegrams. At the time of the sending of the letters and telegrams, the receipt of the money in response thereto, the paying of it to the Enquirer Printing and Publishing Company, and the paying of the

debts of the Enquirer Printing and Publishing Company with such money, and for a long time previous to the sending of such letters and telegrams and until his death, Hanly was a stockholder, director and president of Enquirer Printing and Publishing Company.

It now remains to be determined whether the fund so received by Hanly in response to the letters and telegrams was a gift, and, if so, the terms of the gift, and to whom the gift was made; and depending thereon, whether the common capital stock of the Enquirer Printing and Publishing Company, issued to Hanly as trustee for the fund so received, should be returned to the Enquirer Printing and Publishing Company. The first thing under consideration is the interpretation of the letter and telegram, which has heretofore been made, to the effect that the letter conclusively shows that the Enquirer Printing and Publishing Company was in debt $20,000 and did not have funds with which to pay the debt; that the appeal was made by the letters and telegrams for the purpose of obtaining donations, which donations were to be considered a gift, and not as a loan, to be used to pay the debts of the Enquirer Printing and Publishing Company; and that the donations were to be sent to Hanly, first, that in the event the whole $20,000 was not donated, all donations made were to be returned to the donors, second, in the event the donations were made in the aggregate sum of $20,000 this fund was to be used to pay the debts of the Enquirer Printing and Publishing Company. The letter plainly states that the money was first to go to Hanly to be held by him until the $20,000 was raised, and, after it was raised, to be applied in payment of the debts so stated. The money being in the hands of Hanly, no other person could, except by legal means, obtain the money from the bank in which it was deposited to pay upon the debts of the Enquirer Printing and Publishing Company. Hanly

did as he was ordered to do after the $20,000 was completely subscribed as a gift, and paid the most of the fund to the Enquirer Printing and Publishing Company. The whole fund was subscribed for one purpose, and the remainder of the deposit in bank at Hanly's death was to be used for the same purpose as the major part of the fund. If the $242.36 was given to Hanly, then the whole sum was given to Hanly. If the sum so paid by Hanly out of the fund to the Enquirer Printing and Publishing Company rightfully belonged to the Enquirer Printing and Publishing Company, then the balance of the fund, which is clothed with the same limitations and uses as the major part of the fund, belongs to the Enquirer Printing and Publishing Company. The fund cannot be split up or divided; its ownership is one. There is nothing in either the letter or telegram to show that the fund so donated was for the use of different persons or different corporations.

It is plain here that the trust, if one was created, is not an express trust, for the reason that the letters and telegrams are not signed by the donors. A trust in relation to the gifts, if one was made, is one to be implied after construing the letters and telegrams and the responses in relation thereto. In the making of an implied trust, several things must appear, and that unequivocally; the implication of the trust must be supported by unequivocal acts and conduct of the settlors of the trust; the beneficiary must be unequivocally named; the purpose of the trust must be established by unequivocal implications upon the acts and conduct of the donors. It follows from the foregoing that when the donors or settlors, the trustee, the *cestui que trust*, the property involved in the trust, and the purpose for which the trust fund was to be applied, appear with reasonable certainty, the law is satisfied, and a trust is to

be recognized and enforced. *Citizens Loan, etc., Co.* v. *Herron* (1917), 186 Ind. 421, 115 N. E. 941.

It is not disputed who the settlors of this trust, if it be a trust, were. No one but Hanly claims to be a trustee. There is no dispute as to the nature and amount of the property which composed the trust, if there be a trust. There is no dispute as to the objects to be attained with funds so given by the donors. The settlors are those who donated to make up the aggregate of the fund. Hanly held the fund for the purposes named and was a trustee. The *cestui que trust* is proved plainly to be the Enquirer Printing and Publishing Company, and the object of the trust was to obtain funds to pay the debts of the Enquirer Printing and Publishing Company. No party to this proceeding contends that the responses made by the donors in any way modified the appeal letter or the telegram; from which it is concluded that none of the donors changed the purpose to be attained by the letter and telegram; and it follows further that the telegrams and letters were adopted by the donors as a basis for their gifts, and upon these instruments rests the implied trust by construction. The legal title to the trust fund was in Hanly. The equitable title thereto was in the Enquirer Printing and Publishing Company. There is nothing shown by the terms of the gift that Hanly was to receive, in return for the gift, any of the capital stock of the Enquirer Printing and Publishing Company. There is no basis shown by the evidence in this case to support ownership of the capital stock of the Enquirer Printing and Publishing Company which was given to Hanly in exchange for the trust fund to be in Hanly or in any other person or corporation. It must be concluded in equity that Hanly had no property right in and to the capital stock in question. No one a party to this proceeding had any right to the capital stock in question, unless it can be shown that the fund

was donated for the express purpose of securing stock. Such a purpose is plainly not shown.

The evidence in this case is mostly documentary. It would serve no equitable purpose to remit this case to the lower court for a new trial. It is plain from the evidence which was introduced without objection that the Enquirer Printing and Publishing Company is the *cestui que trust* of the whole fund. The errors assigned by the several parties are not sustained. The decree of the trial court that "the Enquirer Printing and Publishing Company do have and recover of and from its co-defendants and plaintiff possession of the certificates of the common capital stock of the Enquirer Printing and Publishing Company, . . . numbered 152 to 167, both inclusive, and 172 to 176, both inclusive, and of the aggregate par value of twenty thousand five hundred fifty dollars ($20,550); and that the defendant and cross-complainant Enquirer Printing and Publishing Company is the owner thereof; that the trust heretofore existing by virtue of which the decedent J. Frank Hanly held same for the benefit of the Enquirer Printing and Publishing Company, be and the same is herein dissolved, and the defendant Duane D. Jacobs, executor of the last will and testament of J. Frank Hanly, deceased, is ordered to deliver said certificates to the proper officers of the defendant and cross-complainant Enquirer Printing and Publishing Company, and said officers are ordered to cancel same," is affirmed.

The remainder of the judgment of the lower court to the effect that "Duane D. Jacobs, Executor of the last will and testament of J. Frank Hanly, deceased, do have and recover of and from its co-defendants and the plaintiff said sum $242.36 on deposit with the defendant Farmers & Traders Bank of Lafayette, Indiana, in the name of J. Frank Hanly, Trustee, and said defendant last named is ordered to pay same to said Duane D.

Jacobs as such executor as an asset of the estate of his decedent," is reversed, and, in place thereof, it is adjudged and decreed by this court that the defendant below and appellee here, Enquirer Printing and Publishing Company, do have and recover of and from its codefendants and the plaintiff said sum of $242.36 on deposit with the defendant Farmers and Traders Bank of Lafayette in the name of J. Frank Hanly, trustee; and it is hereby further ordered, adjudged and decreed that the defendant below and appellee here, Farmers and Traders Bank of Lafayette, Indiana, pay all the balance of said deposit in the sum of $242.36, and any accruals thereon, to the Enquirer Printing and Publishing Company.

The remainder of the judgment of the trial court as to all parties is in all things affirmed.