State, *ex rel.* Mitchell, *v.* Gray *et al.*, School Trustees.

No. 10,584.

## STATE, EX REL. MITCHELL, *v.* GRAY ET AL., SCHOOL TRUSTEES.

SCHOOLS.—*Constitutional Law.—Education of Colored Children.*—The constitutionality of the law for the establishment of separate schools for colored and white children is settled.

SAME.—*Discretion of School Trustees.—Graded Schools.—Teachers.*—The discretion given by section 4496, R. S. 1881, to school officers to establish separate schools for colored children can not be controlled by the courts, in the absence of malice or corruption, nor can the courts compel the admission of a child to a school already over-crowded, nor consider the competency of teachers, or the necessity of the graded schools, nor determine the grade to which a child is qualified to be admitted.

From the Wayne Circuit Court.

*W. A. Bickle,* for appellant.

*C. H. Burchenal,* for appellees.

ELLIOTT, J.—The question of the constitutionality of the act of May 13th, 1869, providing separate schools for white and colored children is settled by the previous decisions of this court. *Cory* v. *Carter,* 48 Ind. 327 ; S. C., 17 Am. Rep. 738 ; *State, ex rel.,* v. *Grubb,* 85 Ind. 213. Other courts have taken the same view of the subject as our own. *Ward* v. *Flood,* 48 Cal. 36 ; S. C., 17 Am. Rep. 405 ; *State, ex rel.,* v. *McCann,* 21 Ohio St. 198 ; *United States* v. *Bunton,* 13 Rep. 360. The question of the wisdom, justice or expediency of such a statute is one for the Legislature, and not for the courts.

Section 3 of the act of March 5th, 1877, secures to colored children school privileges and prohibits school officers from denying them such privileges, but it leaves to the school authorities of the locality a broad discretion. The duty of determining whether separate schools shall or shall not be organized is lodged in the local school officers, and it would be a usurpation of power for the courts to wrest it from them. Confusion and evil would result from an attempt on the part of the courts to decide what local measures are wise or un-

wise, expedient or inexpedient, and the fundamental principle that courts can not interfere with the exercise of discretionary powers conferred upon officers or inferior tribunals would be violated. Courts can not undertake the government of town, township or city school affairs any more than they can undertake to govern in other municipal affairs. Whether a township, town or city requires separate schools is a question for the decision of the local school officers. If the local officers should deny all school privileges, then, doubtless, the courts might interfere, but they can not decide upon the question whether the school privileges shall be supplied by separate schools, or by schools common to all.

The return to the alternative writ was sufficient without describing in detail the several school-houses of the township. We think it was sufficient for the school officers to state that they had provided schools for colored children with all the rights, privileges and advantages of other schools without specifically describing these rights, privileges and advantages:

The return, in addition to the averment to which we have referred, alleges that the school which the relator left was capable of accommodating him and conferring the school privileges provided by law, but that the one to which he demanded admission was full and could furnish him neither room nor facilities for study. This allegation was of itself sufficient to make the return good. If there was no room for the relator in the school to which he demanded admission, certainly the courts can not compel admission. Whether the relator would have a right to compel the school officers to furnish adequate school privileges is not here the question. The question here is whether he can rightfully ask the courts to push him into a school already filled to its utmost capacity.

The statute provides that when any child attending any colored school "shall, on examination and certificate of his or her teacher, show to the trustee or trustees of any township, town, or city that he or she has made a sufficient advancement

to be placed in a higher grade than that afforded by such colored school, he or she shall be entitled to enter the school provided for white children of a like grade." It is thus made an indispensable condition to a right to enter a graded school that the child demanding admission shall pass an examination and receive a certificate. It is averred in the return that no such examination was passed and no certificate issued, and this bars a right to admission to a graded school on the ground of proficiency in study. The Legislature have ample power to regulate these matters, and it is for us to respect and enforce the law as it is written on our statute books.

It is said by the relator's counsel that the purpose of the law may be defeated by the employment of teachers who are not capable of imparting the knowledge requisite to advancement to a graded school. This argument is not relevant to the issue joined, but, if it were, it does not prove that courts can supply a remedy. Courts can neither employ nor discharge teachers, nor can they enter upon an examination to determine their capacity or lack of capacity, for that duty is committed to the local authorities. No doubt, if it were shown that the local officers were acting corruptly or maliciously and to the injury of the scholar, the law would give redress, but where public officers merely err in judgment while fairly exercising discretionary powers with which the law invests them, there can be no judicial interference. Courts can not decide upon the merits and competency of teachers, for the plain reason that the law invests the local school officers with that duty. It is the theory of the law that the local authorities will justly perform that duty, and that, if they fail, the voters will displace them at the proper time and in the appropriate manner. At all events, no principle of law or justice will justify the courts in assuming the government of schools.

The mental capacity of the child demanding admission to the school was not in issue, but if it had been the only method

Vol. 93.—20

State, *ex rel.* Mitchell, *v.* Gray *et al.*, School Trustees.

by which that could be determined is that pointed out by statute, namely, an examination by his teacher. Teachers and not courts examine the scholars and issue certificates as to their proficiency in their studies. If the teacher fails in his duty, the proceeding must be against him and not against the trustees who are, by law, required to act upon his certificate.

The relator offered to prove the number of grades, and the number of teachers in the school organized for white children, but the court declined to admit this testimony. We do not think there was error in this. It was for the school trustees to determine the number of teachers required as well as the grades that should be established. The number of teachers and grades necessarily depend upon the number of scholars, and the wants of the school, and is a matter to be settled by the school officers. This case illustrates the reasonableness of this rule of law. Very few children attended the colored school, while the attendance at the white was very large, and it is obvious that the corps of teachers and course of instruction necessary in the one were very different from those required in the other. Some officer or officers must pass upon and decide the question of what is necessary in each case, and so long as there is no corrupt or malicious act, and no perversion of power, courts must leave the matter in the hands of those to whom the law has entrusted it. There can, of course, be no denial of educational privileges, no total exclusion from schools, except for cause, but there may be rules and regulations for their government, and these rules and regulations courts are bound to respect. We can not disturb the finding on the evidence.

Judgment affirmed.

Filed Feb. 15, 1884.