STATE, EX REL. CHEEKS *v.* WIRT, SUPERINTENDENT
OF GARY SCHOOLS ET AL.

[No. 25,776. Filed July 21, 1931. Rehearing denied January 5, 1932.]

122

*R. L. Bailey* and *Edward McKinley Bacoyn,* for appellant.

*Hodges, Davis & Hodges,* for appellees.

TREANOR, J.—The appellant, as next friend of the relatrix, began suit in the Lake Superior Court for the purpose of mandating appellees either to reinstate relatrix in a certain named high school or to transfer and admit her "as a high-school pupil in one of the accredited high schools of the . . . school city of Gary, Indiana." The initial pleading of appellant inaccurately "prays that a writ of mandamus issue" from the trial court requiring the defendants "to show cause"; but no objection was made to the form of the pleading and it will be treated on appeal as if it had been properly drawn as a complaint for mandate as required by §1244 *et seq.* Burns 1926, Acts 1915 p. 207 *et seq.* (See *State, ex rel.,* v. *Cox* [1923], 193 Ind. 519, 525, 141 N. E. 225.) In addition to a general denial, the defendants filed "a further and second paragraph of answer" to which the plaintiff demurred. The case was venued to Porter County, where the cause was tried by the court without a jury. There was a finding and judgment for the defendants, and, after the overruling of a motion for a new trial, this appeal was prosecuted.

The circumstances which occasioned this suit were briefly as follows: At the opening of the public schools of Gary in September, 1927, the relatrix enrolled as a pupil of the 10B grade (second year high school) in Virginia Street School; on that date, the Virginia Street School was organized to offer the eight years of elementary grade work and two years of high-school work; on September 19, 1927, all tenth grade work was discontinued in the Virginia Street School and the relatrix and several other pupils, all members of the colored race, were transferred to Emerson High School; shortly thereafter, a large number of white pupils "struck at Emerson" as a protest against the presence of the relatrix and the other pupils who had been transferred from the Virginia Street School to Emerson; the school officials

refused to make any changes at that time and the strikers returned to their classes; the appellant charges that they were induced to return by the promise that the pupils to whose presence objection had been made would be taken out of Emerson High School within 90 days; on December 23, 1927, the superintendent of the Gary public schools notified the relatrix and certain other colored pupils to report for work at the Virginia Street School on January 9, 1928, the date of the opening of school after the Christmas vacation; on January 9, this action was commenced, after refusal by the school superintendent to admit relatrix to any school other than Virginia Street.

Appellant's assignment of errors contains seven specifications. The first is that the trial court erred in overruling appellant's demurrer to the second paragraph of answer; the second, third, fourth and fifth specifications are merely variations of the proposition that the court erred in overruling appellant's motion to set aside submission; and the sixth error assigned is the overruling of appellant's motion for a new trial. The seventh alleged error is not included by appellant under "Points and Authorities," and is, therefore, waived.

We shall consider first the specification that the trial court erred in overruling the demurrer to the second paragraph of answer. This paragraph is as follows: "Now comes the defendants and for further and second paragraph of answer say: That they have provided for relatrix herein and for all other children, a school with all the rights, privileges and advantages of other schools in said city of Gary." The complaint contains several allegations to the effect that the relatrix was being denied "equal high-school educational facilities and advantages afforded the other high-school students of said school city," etc. It is apparent

that the second paragraph of answer constitutes an argumentative denial of particular allegations in the complaint, although it is put into the form of an affirmative defense composed of new matter. (*Flying Squadron Foundation* v. *Crippen* [1930], 201 Ind. 482, 510, 169 N. E. 843.) In discussing the Indiana practice relative to argumentative denials, Pomeroy makes the following comment: "When the answer contains the general denial, and, in addition thereto, a separate defense or separate defenses equivalent to the general denial,—that is, mere argumentative denials as above described,—such additional defenses, it is settled, are irregular, and will be overruled and expunged from the record. The remedy is not by demurrer, for the reasons already given, but by motion to strike out as redundant and superfluous. If, however, a plaintiff, instead of moving to strike out, should demur to the vicious defenses, and that demurrer should happen to be sustained by the lower court, no material error would have been committed, for the same result would have been reached which would be attained by a motion; the record would be cleansed of its redundancy, and the general denial would remain, under which all the facts constituting the defense, and which had been set forth at large in the rejected paragraphs, could be given in evidence at the trial. This practice, I say, is thoroughly settled in Indiana; and the result is a system of pleading in that State which far surpasses, in its brevity and its adherence to the spirit of the codes, that prevailing in any other State." Pomeroy, Code Remedies (5th Ed.) §523, and cases cited in Note 74. It is clear from the Indiana cases cited by Pomeroy that the technically correct method of getting rid of an argumentative denial is by motion to strike out and not by demurrer, since a denial, whether direct or argumentative, is not subject to a demurrer under the code; but it is a well estab-

lished and sound rule that it is not reversible error, either to overrule or to sustain a demurrer to an argumentative denial accompanying a general denial. No harm is done the defendant by sustaining the demurrer, since he can make his full defense under the general denial; and it is just as clear that no harm is done to the plaintiff by overruling his demurrer, since no evidence can be introduced under the argumentative denial which cannot be introduced under the general denial. Both parties in their briefs apparently treat the second paragraph of answer as if it were an affirmative defense containing new matter.

We can dispose of the second to fifth specifications of error altogether, as they all relate to the court's action in refusing to set aside the submission of the cause and to appoint a new judge. The pertinent provisions of the statute involved are as follows: "And whenever any issue of law or fact is submitted to the court for trial, and the judge shall take the same under advisement, the judge shall not, except in case of severe illness of himself or family, hold the same under advisement for more than sixty days; and, if the court wherein said issues arose be not then in session, he shall file his determination therein, in writing, with the papers in the case: Provided, That if the judge shall fail to determine any issue of law or fact which has been taken under advisement within ninety days after having taken the same under advisement, upon written application of any of the parties to the action, or their attorneys of record, duly filed in the office of the clerk of said court and called to the attention of said judge before the announcement of the decision of the issue in question, the submission of said issue shall thereupon be withdrawn and the judge before whom said cause is pending shall be disqualified

to hear or determine any of the issues in said cause, and a special judge shall be appointed to take jurisdiction thereof under the same rules and regulations prescribed by law in cases where the judge is disqualified for hearing a given cause." §603 Burns 1926, Acts 1881 (Spec. Sess.) p. 240, as amended, Acts 1923 p. 254. The statute creates a procedural privilege of which a party may or may not take advantage, and, like other procedural privileges, it may be waived.

The record discloses that the arguments were concluded May 23, 1928, and that no further action was taken until September 4, 1928, when the relatrix, by motion, requested the court to set aside submission and to appoint a special judge. The motion was set for hearing on Monday, September 17, 1928, and was, on that date, overruled, the record showing the following entry: "Which motion is now by the court overruled and denied to which ruling of the court plaintiff excepts and the court files written decision overruling said motion and showing the court's reason therefor, to which ruling of the court, the plaintiff and relator object and except and said motion and the court's written ruling thereof are now filed and ordered made a part of the record herein without Bill of Exceptions."

The court's written statement of reasons contains the following facts: That on May 3, 1928, plaintiff's attorney indicated that he desired to file a brief in the cause and the court delayed the decision until he received the brief on May 20, 1928; that the court set the cause for decision and determination on July 10, 1928; that on July 10, 1928, the court actually entered on its docket a finding and judgment for the defendants; that plaintiff's attorney urged that the court had misconceived the evidence and urged that the court allow oral argument; that, in deference to the insistence of the plaintiff's attorney, the court struck out the aforesaid entry and in-

dicated that he would let the matter go over until the September term of court, when he would reconsider the matter and determine whether to hear oral argument; that, during the summer, he received communications from plaintiff's attorney including a "brief and argument in the form of a letter under date of August 9th, 1928; raising new questions of law which had not previously been considered," etc.

On the basis of the foregoing facts, the trial court concluded that it did not have the cause under advisement after July 10, 1928; and "that, since the relatrix ▇▇ submitted a brief and argument in the form of a letter under date of August 9th, 1928, raising new questions which had not previously been considered, the court had 90 days from that date in which to decide and indicate its decision in the cause." We cannot agree that the trial court did not have the cause under advisement after July 10, 1928, since we do not think that any arrangement or understanding between the court and one party to an action can be given the effect of withdrawing the cause from the advisement of the court; but we do decide that the appellant, in the light of the facts recited by the trial court, waived his privilege of insisting on a withdrawal of submission of the cause.

But the appellant insists that the statement of the trial court can be given effect only as a general finding, since there was no request by either party for ▇▇ special findings; and, consequently, that this court cannot consider the specific facts included in the statement as a justification for the trial court's overruling of appellant's motion. The situation does not involve general or special findings as those terms are commonly understood. The facts set out in the court's statement are facts of which the trial judge acquired knowledge while functioning as a court, but do not rest upon evidence introduced during the trial, and these

facts apparently were known only to the court and to the attorneys of appellant. It is clearly the duty of a trial court to overrule a motion to withdraw submission and to appoint a special judge when the party making the motion is responsible for or consents to the delay; and, in view of the peculiar situation in which the trial judge is placed by the statute, we think it is his duty, on his own motion, to include in the record any facts which constitute a waiver of the privilege to compel withdrawal of submission, when these facts come to the knowledge of the judge in his capacity as judge of the cause in question. There was no error in overruling appellant's motion to set aside submission and to appoint a special judge.

The sixth error assigned by appellant is the court's overruling of appellant's motion for a new trial. The motion for new trial rests upon seven causes. The first cause specified is that the court erred in overruling the plaintiff's demurrer to defendants' second paragraph of answer, which point has already been discussed in this opinion. The sixth cause rests upon the court's action in overruling plaintiff's motion to set aside submission and appoint a special judge, and this alleged error has also been disposed of. Causes four, five and seven, which rest upon alleged errors in admitting and excluding certain testimony, are waived by failure to present under points and authorities. We might say, however, that we have considered these alleged errors and find that the action of the court in no way prejudiced the appellant's cause. The two remaining causes are that (a) the decision of the court is not sustained by sufficient evidence, and (b) the decision of the court is contrary to law.

We think that the proposition that the trial court's decision is not sustained by sufficient evidence will be considerably simplified by first considering one of ap-

pellant's contentions presented under the point that the court's decision is contrary to law. This contention is, in substance, that the Gary school city could not legally maintain a type of high-school organization such as that of the Virginia Street School to which relatrix was transferred; that, under the law, the only types of high school authorized are (1) the ordinary four year commissioned high school, and (2) the so-called junior high school; that the junior high school must include two or three years' work above the sixth grade of the elementary school and not more than the first year of the usual high-school course; and that, when a pupil has completed nine grades of work in a public school, he is "entitled as of grade to enter a four year high school." To appreciate fully appellant's contention, it is necessary to understand the systems of school organization used by the Gary school corporation in so far as it affects the high school. The evidence shows that, in nine different school centers in Gary, first year high-school work is taught; the first two years of high-school work are taught in six of these centers; three years of high-school work are taught in three of the centers and all four years of high-school work are taught in two of the centers, Emerson and Froebel, which are the only commissioned high schools in Gary. The Virginia Street School is one of the six school centers in which the first two years' of high-school work are taught. The centers in which less than the full four years of high-school work is taught are considered integral parts of one of the commissioned high schools, according to the districts in which they are situated; and the employment of teachers, selection of text books, organization of the work, and checking up on the results in all of the nine centers are under the direction of the same supervisors. When a pupil attending one of the centers in which less than the full four years' high-school work is taught completes

the work taught in that center, he is transferred to the nearest center in which more advanced work is taught. Certificates of graduation are issued to students as graduates of Froebel or Emerson, and such certificates do not state whether any of the high-school work was taken in one of the centers other than Froebel or Emerson. On December 27, 1927, the Virginia Street School, which was at that time a part of the Emerson high-school district, was made a part of the Froebel high-school district, and the two years' high-school work in the Virginia Street School was organized as a part of the four years' work of Froebel High School.

Granting that the plan of organization of high school work which is used in the Virginia Street School is not authorized by the Junior high school statute (§6900 Burns 1926, Acts 1919 p. 440), it could be considered a noncommissioned high school course under §6899 Burns 1926, Acts 1907 p. 323. We think, however, that, under the plan of organization used in the Gary school system, Virginia Street School, in so far as high-school work is concerned, is legally an integral part of the Froebel commissioned high school. There is no provision of the law relating to the public-school system of Indiana which requires that all the work of a particular high-school organization be carried on under one roof. The governing officials of a school corporation have the power to determine whether the school interests of their corporation can be better served by offering all of the high-school work in one central building or centrally located group of buildings, or by offering a part of the courses included in a regularly commissioned high school in different school buildings located in different parts of the school corporation and then providing for the completion of the work required for graduation from a commissioned high school in one or more school centers. We conclude that the Gary

school corporation is acting within its legal powers in maintaining its present high-school organization; that, on January 9, 1928, the Froebel High School legally included the two years' high-school work of Virginia Street School; and that there is no merit in the contention that the Virginia Street School is not a "legal high school."

In determining whether the evidence is sufficient to sustain the conclusion that the Virginia Street School offered the relatrix privileges and opportunities equal to those of students in other high-school centers, we must limit our consideration to privileges and opportunities offered in the first two years of high-school work. There is no contention by the defendants that the Virginia Street School and the other five school centers offering only two years of high-school work possess the complete physical equipment, or offer as wide a choice of subjects, as the Emerson and Froebel high-school centers. We think the trial court was justified in concluding that, on January 9, 1928, the Gary school corporation had provided in the Virginia Street School privileges and opportunities for high-school pupils substantially equal to those offered in other high-school centers to first and second year high-school pupils. We think the record discloses considerable evidence tending to show that, prior to January 9, 1928, conditions in Virginia Street School were not up to the standard of other high-school centers; but the testimony of the superintendent and assistant superintendent of schools and of the principal of the Virginia Street School and other witnesses is sufficient to show that the defective conditions had been removed prior to January 9, 1928, the date on which the transfer of relatrix became effective. The undisputed evidence discloses that pupils [without regard to race] who have in the past completed two years of high-school work in centers not

offering third or fourth years of high-school work are transferred as a matter of course to the nearest center offering three years of high-school work, and, if the latter school offers only three years of high-school work, they are then transferred either to Emerson or Froebel, in each of which is offered the full four years' work. The undisputed evidence also shows that individual pupils [without regard to race] who are pursuing special courses which require subjects not available in a school center in the district in which they reside are taken care of as individual cases by transfer to a school offering the required subjects. The relatrix and all other first and second year high-school pupils are entitled to an opportunity to pursue any recognized high-school course offered by the Gary school city; consequently, if a pupil attending a center offering only one or two years' high-school work should elect a recognized course which requires four years' work in a particular subject, he would be entitled to four years' instruction in the required subject; and, if his center did not offer the first two years of the required work, he would be entitled to a transfer to some school in which he could receive the full four years' instruction. If the relatrix had shown that she was pursuing a high-school course which required the completion of specified subjects which she could not obtain if she should be required to remain in Virginia Street School for her second year of high-school work, she unquestionably would have been entitled to a transfer to another high school, for, otherwise, she would not have been enjoying educational privileges and opportunities equal to those of pupils who were taking first and second year high-school work in Emerson or Froebel. A pupil would not, however, be entitled to a transfer in order to obtain even a required subject while pursuing first or second year high-school work, if, under the schedule of subjects, such subject

would be available during his third or fourth year in another school.

The evidence shows that arrangements had been made for the pupils who were transferred back to the Virginia Street School to pursue the same subjects that they had been pursuing at Emerson, and there is no showing by the relatrix that she could not, either during the remainder of her second year of high-school work in Virginia Street School, or during her third or fourth year in Froebel, have the opportunity to take all the subjects required for the course which she had elected to follow during her four years of high-school work. The relatrix testified that she had applied for swimming sometime prior to the date of her transfer back to the Virginia Street School, and that Virginia Street School does not offer swimming. Swimming is not required of any high-school student in the Gary schools and is offered only in Emerson and Froebel high schools. Swimming is merely one physical activity which may be elected by students in part satisfaction of the requirements of physical training; and, since sufficient physical training is offered in Virginia Street School to satisfy all requirements in that respect, the inability of the relatrix to engage in swimming while a student in Virginia Street School does not represent any actual interference with her educational privileges and opportunities, and especially so since in only two of the nine high-school centers in Gary do the pupils have the opportunity to participate in swimming. Furthermore, after completing her second year in Virginia Street School, there will remain two years in Emerson or Froebel during which time she can elect swimming in case she is still pursuing work in physical training. We hold that the evidence is sufficient to justify the trial court in concluding that the relatrix did not suffer any loss of educational privileges and opportunities as a re-

sult of her transfer from Emerson to Virginia Street School.

One of the allegations of the complaint is that the "relatrix is a victim of a common scheme designed by the Gary school city and its officers, the Gary civil city and its chief executive officers and other high officials, all of Gary, Lake County, Indiana, that they are actually conspiring and confederating to set aside, to defeat, to annul and make void the positive provisions of the Act of 1877, in which provisions are made to secure full and equal facilities for the proper education of all unmarried children under 21 years of age in the State of Indiana, and by so conspiring and confederating they have encouraged mob violence, strikes and civil commotion, whereby they have sought to intimidate your relatrix; that the defendants have conspired and are still conspiring to withhold the advantages and benefits of an equal education from your relatrix." In support of such allegation, the appellant sets out in his brief, as undisputed evidence, the following: "That relatrix was transferred from Emerson school to Virginia Street school December 23, 1927, partly because of her color, (she being a so-called colored person); partly because he (the superintendent) had some trouble about it with white students and partly to carry out policy of having 10th grade in Virginia Street school; that white high-school students struck at Emerson and then went back in the school; that they objected to presence of relatrix on account of her color and held mass meetings; that she hadn't been there but a week or two when this occurred and he kept her there until December 23rd; and strike committee made statement to other children that they were promised she would be taken out in 90 days; that colored children attend both the complete high schools; that there is no legally segregated colored school in Gary; that relatrix

demanded of the superintendent of Gary schools re-admission into Emerson school after her transfer, which was refused."

We do not think there is any evidence tending to show that either the civil or school officers of Gary encouraged "mob violence, strikes and civil commotion" or in any way encouraged the crude and vulgar demonstration by students of Emerson high school which was staged as a protest against the presence of about 20 colored students in a group comprising approximately 2,400. On the other hand, it is a fair inference from the evidence that the relatrix and certain other colored pupils were transferred back to Virginia Street School, partly at least, for the purpose of avoiding future embarrassment and possible interference with the orderly functioning of the school organization. The trial court might reasonably have inferred that there was a more or less definite understanding among the civil and school officials of the city of Gary that such transfer would be made. The trial court, however, had evidence before it showing that, in transferring the relatrix and the other pupils to Virginia Street School, the Gary school officials were acting in harmony with their policy of offering to pupils as much high-school work as is practicable in the same school in which the pupils have had their elementary school work, a policy, which, according to testimony, had resulted in "more pupils staying in school for a longer time." Also, there was evidence to the effect that the pupils were transferred only temporarily to Emerson High School in September, 1927, until arrangements could be made at Virginia Street School to properly provide for second year high-school pupils. But, regardless of the motive of the school officials, if such transfer could be accomplished without transgressing the legal rights of the relatrix and other pupils, such transfer would not become illegal by reason of the fact that there was an

agreement or understanding among civil and school officials that such transfer would be made. The relatrix is seeking relief in an action for mandate, and "to warrant a court in granting a writ of mandamus against a public officer, such a state of facts must exist as to show that the relator has a clear right to the performance of the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing." *State, ex rel.,* v. *Grubb, Trustee* (1882), 85 Ind. 213, 217. In other words, one obtains relief in an action for mandate because of his clear legal right to the performance of the act demanded and not because of the improper motive of the officer in refusing to perform the act. It is true, as appellant states, in substance, that the law will give redress if local officials "act maliciously and corruptly to the injury of a scholar." *State, ex rel.,* v. *Gray* (1884), 93 Ind. 303, 305. But there must be a legal injury, and the essence of a legal injury upon which mandatory relief can be predicated is the refusal to perform a duty, to the performance of which the complaining party has a clear legal right. Since, under our statute (§1247 Burns 1926, Acts 1881 [Spec. Sess.] p. 240, as amended Acts 1911 p. 541), one who is awarded mandatory relief may be given damages, the motive of an official in refusing to perform a duty might become material in assessing damages, if the injured party makes out a case for mandatory relief.

Appellant is quite right in his statement that the "Indiana Legislature intended for colored children to have equal educational advantages with white children." §7072 Burns 1926, Acts 1877 p. 124. But the act of 1877 authorizing school corporations to organize colored children into separate schools has been held constitutional and can be held constitutional only on the theory that difference in race or color affords a reasonable basis of classification of public school pupils

for the purpose of organization into separate schools. *Cory* v. *Carter* (1874), 48 Ind. 327, 361, 17 Am. Rep. 738. Since we hold that the plan of organizing high-school centers with courses of one, two or three years' work is legal, it follows that the officials of the school city of Gary could, as they clearly did, organize a two year high-school course in Virginia Street School for colored pupils, and it is not material that all of the colored children of Gary were not organized into a separate school or schools. It is true that appellant insists that "there is no legally segregated colored school in Gary"; but the evidence discloses that only colored children attended Virginia Street School, and, whenever a school corporation arranges to accommodate only colored children in a particular school, we think the effect is to create a legally organized separate school for the colored children attending that school. But if Virginia Street School were not a separate school for colored pupils, the relatrix cannot complain of being attached thereto, since she resided in territory which was properly included in the Virginia Street School district. As already indicated, the organization of any such separate school for colored children must not result in the denial of equal educational privileges and opportunities.

Appellant is correct in his contention that, if the complaint shows relatrix is entitled to any mandatory relief, it is good, and that, consequently, she is entitled to such relief as the facts and law warrant. The prayer of the second paragraph of the amended complaint is broad enough to support a mandate to admit the relatrix to any accredited high school in Gary upon a showing that she had a legal right to demand admission to some accredited high school other than the Virginia Street School.

We have considered causes four, five and seven under appellant's motion for a new trial, although they were

waived by appellant's failure to include them under "Points and Authorities." In cause seven, appellant contends that the court erred in permitting counsel for defendants "to cross-examine the witness Wirt (when he was called as a witness for the plaintiff) on matters not brought out by the plaintiff in his direct examination or gone into during same, without making said witness their own," etc. The court expressly stated that, for purposes of impeachment, witness Wirt would be considered the witness of the defendants. Furthermore, witness Wirt was subjected to direct, redirect and cross examination by each side, and the greatest latitude was allowed in all these examinations, and it is inconceivable that any injury was done by allowing the witness to answer, on cross examination, the few questions objected to by plaintiff. Under cause five, appellant contends that the court erred in excluding testimony to the effect that relatrix had been transferred from Emerson school because of an existing conspiracy to deprive relatrix of her educational rights, "conspiracy having been alleged by relatrix in the complaint." This was not injurious, since relatrix failed to show that she had been deprived of "her educational rights," and consequently the existence of a conspiracy was not material.

Cause four assumes that it was error for the trial court to admit evidence of acts occurring "after suit moved." It is well established that a court from which mandatory relief is being sought is entitled to know the actual situation at the time of the trial and will grant or refuse relief on the basis of the then existing situation.

"The question whether a mandamus should issue to protect the interest of the public does not depend upon a state of facts existing when the petition was filed, if that state of facts has ceased to exist when

the final judgment is rendered." *Northern Pac. Co.* v. *Dustin* (1892), 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092. See High, Extraordinary Legal Remedies, §14; Merrill, Mandamus, §§66, 67; *State, ex rel.,* v. *Indianapolis Gas Co.* (1904), 163 Ind. 48, 71 N. E. 139; and 38 C. J. 551.

We find no harmful error in the conduct of the trial, and, on the merits of the case as presented on appeal, we decide: (1) That the Virginia Street high-school work was actually and legally a part of the high-school course at Froebel, a regularly commissioned high school; (2) that the evidence was sufficient to sustain the conclusion that the Virginia Street School offered privileges and opportunities equal to those of other two-year high-school centers; (3) that the evidence was sufficient to sustain the conclusion that the relatrix individually suffered no loss of equality of privileges by reason of her transfer to Virginia Street School; and (4) that the relatrix was properly assigned to Virginia Street School, either on the ground that this school was a separate school for colored children or because she resided within the Virginia Street School district.

Judgment of the trial court is affirmed.