INDIANA ALCOHOLIC BEVERAGE COMMISSION *v.* STATE OF INDIANA ON THE RELATION OF VAUGHN E. HARMON.

[No. 778S150. Filed July 25, 1978.]

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellant.

*David F. McNamar, Michael R. Franceschini,* of Indianapolis, for appellee.

DeBruler, J.—This is an appeal by the Indiana Alcoholic Beverage Commission (ABC) from a judgment in favor of Vaughn E. Harmon following trial in an action for mandate. The judgment appealed from required the ABC to conduct a hearing on Mr. Harmon's application for a license for the year 1974-75 and to decide whether it should be granted, and in addition, awarded him a money judgment for damages against the ABC in the sum of $5,355. The Court of Appeals, First District, by order, relieved the ABC of the requirement of conducting a hearing and ordered instead that it grant or deny the application after conducting an appropriate investigation. The damages recovered by Mr. Harmon were also reduced by the sum of $300, but the money judgment was affirmed in other respects. The opinion of the Court of Appeals is to be found at 365 N.E.2d 1225. We have granted transfer on petition of the ABC.

The appeal presented three issues, the first of which was whether the trial court had authority to require the ABC to act upon the Harmon application. We agree with the Court of Appeals that the trial court had such authority and adopt its opinion in this regard. The second issue presented was whether the trial court erred in denying the motion of the ABC for a continuance of the trial. We agree that this was not error and adopt the opinion of the Court of Appeals as it deals with this issue. The statement of facts, issues, and the court's treatment of these first two issues is adopted and may be found in the separate appendix to this opinion.

We have granted transfer for the purpose of clarifying the rule of damages applicable to actions in mandate. Damages are presently recoverable by the successful plaintiff in an action in mandate and they are to be determined by application of the standard set forth in Ind. Code § 34-1-54-4 (Burns 1973) which provides:

"Said action for mandate shall stand for issue and trial, and issues of law and fact may be joined, and amendments, continuances and appeals granted therein, as in other civil actions; and in rendering final judgments in said actions, if the finding and judgments be for the plaintiff, the court shall grant and adjudge to the plaintiff such relief, and such only, as he may be entitled to under the law and facts in such action, *together with damages as in actions for false returns,* and costs shall be awarded as the court may direct." (Emphasis added.)

The governing language, "together with damages as in actions for false returns" has persisted for a long time in our statutes relating to the mandate remedy, yet has never been fully considered by this Court as far as we have been apprised. In *State ex rel. Cheeks* v. *Writ,* (1931) 203 Ind. 121, 177 N.E. 441, this Court opined that

"Since . . . one who is awarded mandatory relief may be given damages, the motive of an official in refusing to perform a duty might become material in assessing damages if the injured party makes out a case for mandatory relief."

The party prosecuting the appeal in that case had been unsuccessful in making out a case for relief and no other mention of damages is made in the opinion. In *State ex rel. Mitchell* v. *Gray,* (1883) 93 Ind. 303, the Court stated that "No doubt if it were shown that the local officers acting corruptly or maliciously and to the injury of the scholar, the law would give redress." However in this case, too, the party appealing had not been granted mandatory relief sought. These two cases were relied upon by the Court of Appeals in affirming the damages recovered against the ABC. They provide little help in understanding the meaning of the phrase under consideration here.

A like reference to the action for a false return is to be found in "An act concerning proceedings in civil cases," being Chapter 38 of the Acts of 1881, which the statute quoted in part above amended in 1911. Section 808 of this act relating to mandamus proceedings provides:

"In case a verdict shall be found for the plaintiff where the writ is in the alternative, or if judgment is given for him, *he shall recover damages as in an action for a false return, against the party making the return,* and a peremptory writ shall be granted without delay." (Emphasis added.)

When the two statutory provisions quoted above are considered together and their close relationship is understood, it is apparent that the reference in the present █ ██ statute quoted first above to a "false return" identifies a false return made by a party in response to an alternative writ of mandamus. At common law an action on a false return to a writ of mandamus would only be commenced after the conclusion of the mandate proceeding. 55 C.J.S. *Mandamus* § 342 (1948). The purpose of the present statute, relevant here, was to permit the mandate action and the action on a false return to be tried in the same proceeding. The courts of Missouri have construed their statute utilizing this same language in this manner and the reasoning of those cases on the point is persuasive. *Yates* v. *Durk,* (Mo. App. 1971) 464 S.W.2d 43; *State ex rel. Alexander* v. *Ryan,* (1876) 2 Mo. App. 303. And moreover, there is nothing in our statute to suggest that the Legislature intended to affect at all the rule governing the recovery of damages for such false returns. We, therefore, cannot agree with the decision of the Court of Appeals, First District, in *Perry County Council* v. *State ex rel. Baertich,* (1973) 157 Ind. App. 586, 301 N.E.2d 219, wherein that court concluded that there was a direct relationship between the statutory rule of damages in the mandate statute and the statutory rule of damages applicable in suits against a sheriff for a false return contained in Ind. Code § 34-1-40-3 and § 34-1-40-5 (Burns 1973). We cannot but conclude that our present mandate statute, by permitting damages to be recovered "as in actions for false returns" incorporated the rule of damages applicable at common law for actions on a false return to an alternative writ of mandamus.

At common law, trespass on the case was the proper remedy against an officer for making a false return. Koffler, Reppy, *Common Law Pleading* § 93 (1969). Case was a tort involving a legal duty, a breach thereof by a wrongful act, and damages proximately caused by the wrongful act. A return to an alternative writ found by the issuing court to be sufficient at law and in fact could not be traversed, and ended the proceeding against the party seeking the mandamus remedy. If the moving party lost as a result of a return found sufficient and then discovered that the return was false in point of fact, rather than in point of law, such party could then institute a separate action at law and, upon sufficient proof of the false factual basis for the return, recover damages. In such separate cases, it was conceived that there was a duty to make a truthful return, and that such duty was breached by the making of the false return. The damages recoverable were those for injuries sustained as a natural and probable consequence of the wrongful refusal to comply with the alternative writ and the expenses reasonably and necessarily incurred in compelling compliance. *Larabee Flour Mills Co. v. Missouri Pacific Ry. Co.*, (1911) 85 Kan. 214, 116 P. 901, rev'd other grounds 234 U.S. 459, 34 St.Ct. 979, 58 L.Ed. 1398; Anno. 73 A.L.R.2d 903 (1958).

Turning back to our present mandate statute, we find that the alternative writ of mandate was abolished and along with it the return to the writ. Yet the legislative draftsman saw fit to retain the statement that damages are recoverable under the same terms and conditions as they were recoverable at common law in actions for false returns. Given the retention of the language we cannot ascribe to the Legislature an intention to do away with the right to recover damages along with the writ of mandamus, as such result would be totally at odds with the express language retained. In place of the alternative writ of mandate, the Legislature has substituted the summons and the requirement of an answer. Drawing upon this substitution

and the history of the language under question, we believe it reasonable to conclude that the Legislature intended to permit the successful plaintiff to recover damages if he is required to make proof on issues of fact in order to obtain a judgment compelling a defendant officer or body to comply with the law. We do not believe that the Legislature intended, by abolishing writs of mandate, to increase or decrease damages recoverable in mandate actions. So conceived, it is the subjection of the plaintiff to the rigors, vexation, and expense of trial on issues of fact, upon which the right to an order compelling performance depends, which is the injury for which damages have been and should remain recoverable. Accordingly, successful plaintiffs under our statute are entitled to recover damages for all injuries flowing as a natural and probable consequence of the subjection to such trials. Finally, we do agree with the result reached in *Perry County Council* v. *State ex rel. Baertich, supra,* that attorney fees are not part of these recoverable damages.

We now remand to the trial court and order it to modify its judgment by eliminating the requirement that the ABC hold a hearing and by substituting in its place and stead a partial final judgment that the ABC approve or deny Harmon's application after conducting whatever investigation it deems necessary. Upon compliance such partial judgment is affirmed.

We now further order and direct that the trial court set aside its judgment for money damages and upon reconsideration of the evidence presented or upon further hearing as the court may deem just, and upon application of the rule of damages set forth in this opinion, redetermine whether the plaintiff is entitled to damages and if so the amount thereof, and render a new judgment accordingly.

Givan, C.J., Hunter, Prentice, and Pivarnik, JJ., concur.

## APPENDIX

### STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the second District in order to help eliminate the disparity in caseloads among the Districts.

Defendant-appellant Indiana Alcoholic Beverage Commission (ABC) appeals from a judgment in favor of Vaughn E. Harmon which was rendered after trial on an action for mandate.[1]

## FACTS

Harmon was the holder of a two-way (beer and wine) liquor permit which had been issued to him by the ABC. In August, 1974 Harmon applied for a renewal of that permit. The Cass County Local Board of the ABC reviewed Harmon's application; two members of the local board voted to approve his application, one voted to deny it, and one abstained. Harmon's application was then submitted to the ABC for the actual renewal of the permit. The ABC wrote a letter to Harmon telling him that in light of Ind. Code § 7.1-2-4-16 (Burns Supp. 1976)[2] the ABC did not consider the local board's action on his application a positive recommendation, and that if he wanted anything more to be done about his application, it would be necessary for him to take the next step. (The commission did not inform him as to what that step should have been.)

In September, 1974 Harmon filed a petition for review of the commission's announced "inaction" on his application. The commission did not respond to Harmon's petition for review, nor did it hold a hearing to determine the appropriateness of its failure to act upon Harmon's petition.

---

1. See Ind. Code §§ 34-1-58-1 and 34-1-58-2 (Burns Code Ed.)

2. Ind. Code § 7.1-2-4-16 (Burns Supp. 1976) states that three members of a local board constitute a quorum for the transaction of business, and that action may be taken only upon the affirmative vote of three members of that board.

Each month Harmon sought a temporary permit from the ABC so that he could operate his establishment on a month to month basis. These monthly permits were granted, but they were not always issued in time to allow Harmon to run his business on a continuous basis. Because he did not know whether he would be in business from one month to the next, Harmon was unable to attract and hire certain entertainment groups to perform in his establishment. During this entire period the ABC failed to act upon either Harmon's application for the renewal of his permit or upon his petition for review.

In May, 1975 Harmon filed a verified complaint for mandate with the trial court, wherein he asked the trial court to compel the ABC to issue him a permit and $10,000 in damages. After hearing the evidence and the arguments of both parties the trial court entered judgment in favor of Harmon by awarding him $5,355 in damages and by ordering the ABC to hold a hearing to determine whether Harmon's two-way liquor permit should be renewed.

## ISSUES

The issues which have been presented to this court for review are as follows:

1. Whether the trial court had jurisdiction of the subject matter of the cause of action in the case at bar.

2. Whether the trial court denied the ABC a fair trial by not giving the ABC sufficient notice of the trial date and by denying the ABC's motion for continuance.

3. Whether the judgment of the trial court, which assessed damages against the ABC in the sum of $5,355.00 with costs and interest, was contrary to law.

## ISSUE ONE

The ABC contends that the trial court did not have subject matter jurisdiction of the cause of action in the case at bar. The ABC correctly contends that a trial court does not have

the power or authority to order the issuance of a liquor permit.[3] However, a careful examination of the order of judgment in the case at bar would show that the trial court did not order the ABC to issue Harmon a permit, but rather the court ordered the ABC to hold a hearing to determine whether a permit should be issued.

The ABC is the sole governmental agency in Indiana which is empowered to issue or renew a retail liquor permit. As such, it has a statutory duty to act upon each properly tendered application by either approving it or denying it.[4]

An action for mandate is a proper remedy when an inferior court, corporation, public or corporate officer or person fails to perform a duty which is imposed by law.[5] Therefore, when the ABC failed to act upon Harmon's application in accordance with its statutory duty, Harmon was empowered to seek to compel the agency to act by means of an action for mandate. It should be noted, again, that Harmon could not compel the ABC to issue him a permit, but he could compel the ABC to take action upon his application.

The ABC contends that since the local board did not approve Harmon's application with three affirmative votes, the commission itself was powerless to act upon that application. This contention is without merit.

Ind. Code § 7.1-3-19-1 (Burns Supp. 1976) provides:

> "*The commission in its absolute discretion* shall issue, suspend, or revoke, except as otherwise provided in this title [7.1-1-1-1—7.1-5-11-16], a retailer's or dealer's permit of any type." (Our emphasis)

Ind. Code § 7.1-3-19-10 and 7.1-3-19-11 (1976 edition) provide:

---

3. See Ind. Code § 7.1-3-19-2 (Burns Supp. 1976), 7.1-2-2-9 (Burns Supp. 1976), Ind. Code § 7.1-3-23-1 (Burns Supp. 1976), and *State ex rel. Alcoholic Beverage Comm.* v. *Lake Superior Court* (1972), 259 Ind. 123, 284 N.E.2d 746.

4. See Ind. Code § 7.1-2-3-9, *supra,* and Ind. Code § 7.1-3-1-1, *et seq.* (Burns Supp. 1976).

5. See Ind. Code § 34-1-58-2, *supra.*

"Sec. 10. Commission's Action.—The commission may investigate in any manner it deems best to enable it to act upon the application in a particular case. *The commission may grant or refuse the application accordingly as it deems the public interest will be served best.* The action of the commission on the application for a retailer's or dealer's permit of any type shall be final.

"Sec. 11. Deference to Local Board.—*The commission shall decline the application for a retailer's or dealer's permit of any type of a majority of the members of the local board recommend that the permit not be granted."* (Citations omitted) (Our emphasis)

It is clear from Ind. Code § 7.1-3-19-1, *supra,* and Ind. Code § 7.1-3-19-10, *supra,* that the ABC has absolute discretion in granting or denying an application for a retailer's permit. Implied within that power to act is also a duty to act. The same public interest, which the ABC must consider when it decides to approve or deny an application, requires that action be taken upon each application within a reasonable time, so that an applicant will not, as in the case at bar, be suspended for an extended period of time at a point somewhere between approval and denial, not able to proceed with his business, nor able to further pursue his administrative remedies.

Ind. Code § 7.1-3-19-11 indicates that the function of the local board is that of a recommending body. The commission itself is the ultimate decision maker; it is required to follow the recommendation of the local board only when a majority (3 or more) of the members of the local board vote to deny the application for a permit. In all other instances the commission can act with or without the approval of the local board.

In the case at bar the ABC failed to act where it had a statutory duty to do so. It would have been proper for the court to mandate the ABC to act in accordance with its statutory duty.

Our examination of the pertinent statutes[6] reveals that prior to approving or denying an application for a permit

---

6. See Ind. Code §§ 7.1-3-19-1 through 7.1-3-19-11 (Burns Supp. 1976).

the ABC has no statutory duty to hold a hearing; it is only required to perform whatever investigation it deems necessary. We are of the opinion that the trial court exceeded its authority when it required the ABC to hold a hearing.

ISSUE TWO

The ABC contends that it was denied a fair trial by the court's denial of the ABC's motion for continuance. The ABC contends that its counsel in the Attorney General's office did not receive notice of the trial date for this matter until 3:30 p.m. on the day preceding trial. The ABC alleges that it did not have sufficient notice to allow its counsel to adequately prepare for trial.

The granting of a motion for continuance is within the discretion of the trial court, but such motion should not be denied if the moving party can show good cause for the continuance.[7]

The court in *Hambey, supra,* at page 398 stated the following:

> "Trial courts traditionally have sought to accommodate counsel where continuances are sought in order that a litigant's case may be properly presented in court. In fact, reliance on judicial leniency in granting continuances has often served as an opiate to trial counsel. The result has been undue delay in disposition of pending cases. Courts in recent years have justifiably tended to be more strict in requiring 'good cause.' " (Citations omitted)

In the case at bar the Attorney General's office, counsel for ABC had been directly involved in this matter for more than two months prior to trial. It would have been necessary for the Attorney General's office to have conducted a thorough investigation of the matter before it filed an answer. That office had several hours immediately prior to trial to make any last minute preparation. Also, the ABC, through its counsel in the Attorney General's office, made no attempt to

---

7. See *Hambey* v. *Hill* (1971), 148 Ind. App. 662, 269 N.E.2d 394.

show in what way it was prejudiced by the trial court's denial of the ABC's motion for continuance. There was no allegation that a necessary witness was absent or that time was needed to procure additional evidence.

In light of the facts mentioned above, it is our opinion that the trial court did not abuse its discretion in denying the ABC's motion for continuance. Therefore, we hold that the trial court did not err.

NOTE.—Reported at 379 N.E.2d 140.